UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
**CIVIL ACTION NO.**

JOE and IRENE VALENTINE

      Plaintiff,

v.

TOWN OF CHAPEL HILL

      Defendant.

Case No.

## VERIFIED COMPLAINT

COMES NOW the plaintiffs, Joe and Irene Valentine, by and through the undersigned

counsel, and files their Complaint against the Town of Chapel Hill based upon the following:

## INTRODUCTION

The Valentines purchased a single family home located at 103 New Parkside Dr. in the

Town of Chapel Hill, North Carolina (the "Subject Property") by General Warranty Deed dated

July 22, 2004 in fee simple absolute from the sellers and the deed was duly registered with the

Register of Deeds, Orange County, North Carolina, on August 4, 2004. The Subject Property was

the Valentine family's primary residence from July 2004 until at least August 2016. They currently

reside in Florida, but maintain their ownership interest in the Subject Property.

As the Valentines own the Subject Property in fee simple absolute, they enjoyed the full

bundle of rights that a property owner has under applicable constitutional, statutory and common

law in North Carolina, which includes the right to derive income from the property. A review of

the Chapel Hill Town's zoning regulations in 2016 did not reveal any restrictions on the right of

the petitioners to lease the Subject Property for single family use nor did it discriminate between

leases based on duration. The term "short term rentals" was not even defined in the Town's then existing zoning regulations.

In October 2016, the Valentines began publicly advertising and hosting short term vacation rentals (STR) for single families at the Subject Property through two short term rental platforms: AirBnB and HomeAway (now VRBO.) During the period from October 2016 to December 2021, the Valentines continuously listed the Property for short-term rentals and hosted 96 STR stays for a total duration of 512 nights at the Subject Property through Airbnb and VRBO. Almost all of these stays accommodated single families averaging 4 to 5 nights for each stay.

From October 2016 through December 2021, the Valentines have continuously operated their STR business for hosting single families at the Subject Property through both AirBnB and VRBO in a very professional manner and have received no complaints from either neighbors or Town officials about any of the families to whom they have rented.

On June 23, 2021, the Town of Chapel Hill made text amendments to its Land Use Management Ordinance (LUMO) Sections 3.7, 4.9, 6.27, and Appendix A to ban homeowners from offering dedicated short term rentals (hereinafter "dedicated STRs") at property they own in R-LD5, RT, R-Ld1, R-1A, R-1, R-2, R-2A, R-3, R-4, R-5, or R-SS-CZD residential zones. These amendments are collectively referred to herein as the "STR Ordinance". The new ordinance went into effect immediately and gave non-compliant homeowners 18 months' time to come into compliance or face penalties for violations. A true and correct copy of the STR Ordinance is attached hereto as Exhibit A.

Since the Valentine's Subject Property is a non-primary residence located in the R-2 zone, where the petitioners had been openly and legally operating a dedicated STR for over five years

prior to the enactment of the STR Ordinance, they sought a zoning opinion from the Town regarding the continued operation of the Subject Property as a dedicated STR under a non-conforming use approval.

By their letter of September 1, 2021, the Town *inter alia* informed the Valentines that "the use of the house at 103 New Park Side Drive as dedicated STRs is not a legal nonconforming use as the short-term rental use was not expressly listed in the LUMO and was thus prohibited by the LUMO prior to the short-term rental ordinance of June 23, 2021. This decision is the subject of a separate appeal in Orange County Superior Court case number 21 CVS 1341.

Plaintiffs now seek a declaratory judgment regarding the legality of the STR Ordinance. A declaratory judgment is necessary and appropriate in that Plaintiffs are persons whose rights, status, and legal relations are affected by the STR Ordinance, pursuant to the Declaratory Judgment Act, including N.C.G.S. § 1-254, and 28 U.S.C. § 2201.

## THE PARTIES AND JURISDICTION

1. Petitioners Joe and Irene Valentine are natural persons and current residents of Palm Beach County in Florida. They are the sole owners of the Subject Property located in Chapel Hill in Orange County, North Carolina, and have so owned the Subject Property since August 2004. This was their primary residence from August 2004 to August 2016 when they moved to Washington D.C.  In October, 2018 the Valentines moved to Florida due to Mr. Valentine's employment. The Valentines bought another home in Florida in 2019 where they currently live but they make frequent visits to the Subject Property which is now their second home.

2. The Town of Chapel Hill is an incorporated municipality and body politic located in Orange County, North Carolina.

3. The Town has no immunity for the constitutional claims and, upon information and belief, has purchased liability insurance or otherwise waived immunity for all claims asserted in this action.

4. This Court has jurisdiction over this matter as most of the claims in this action arise under the United States Constitution in accordance with 28 U.S.C. § 1331. In addition, this Court has jurisdiction over the related state law claims because they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy in accordance with 28 U.S.C. § 1367.

5. Alternatively, this Court has jurisdiction over this matter in accordance with 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.00.

6. N.C.G.S. § 160D-1403.1 permits any person with standing to challenge a local ordinance to do so via a civil action filed in either state or federal court within one year following enactment of the ordinance.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

### FACTS

8. Husband and wife Joe and Irene Valentine, have continuously owned in fee simple estate since July 2004 a single family home, located at 103 New Parkside Drive, Chapel Hill, North Carolina 27516 (the "Subject Property"), which is within a lot that was created in 1999 as part of the Parkside Cluster Subdivision – Phase V community, that is zoned Residential-2 (R-2), and located off the intersection of New Parkside Drive with Martin Luther King Jr. Blvd. in Chapel Hill, North Carolina.

9. The Valentines purchased the Subject Property on July 22, 2004 in fee simple estate by General Warranty Deed that was duly registered with the Registrar of Deeds, Orange County, NC on August 4, 2004. A true and accurate copy of the deed is attached hereto as Exhibit B. The Valentines lived there using it as their primary single family home till August 2016 when they moved initially to Washington D.C. in August 2016. In October 2018 the Valentines moved to Florida, ultimately purchasing a second home, on or around April 2019, that is now their primary residence.

10. The Valentines' move out of Chapel Hill in August 2016 to Washington D.C. was not intended to be a permanent one, and they attempted to lease the Subject Property to earn rental income to pay the mortgage and other expenses. However, they faced difficulties in finding tenants to lease their furnished Subject Property on a long term basis as most long-term tenants preferred to lease unfurnished homes.

11. The Valentines then turned to online STR platforms like AirBnB and VRBO, who advertised that STR tenants needed fully furnished homes for short stays, and explored the possibility of offering dedicated STRs through these online service providers at the Subject Property.

12. Prior to renting the Subject Property as an STR, the Valentines investigated whether whole house dedicated rentals for periods of fewer than 30 days were permitted by local law as well as by the covenants, restrictions, and rules of their home owners' association. As part of their bundle of rights in the fee simple estate ownership of the Subject Property in Chapel Hill, that is derived from constitutional, statutory and common law applicable to North Carolina, they were aware that they possessed *inter alia* the right to lease the Subject Property to tenants to derive rental income and found no restrictions on such leasing either under the Town's then existing

zoning regulations or their homeowners association's covenants. They also found no distinction between short and long term leases in the Town's then-existing zoning regulations.

13. Numerous single family homes were and continue to be available for lease on the rental market in Chapel Hill as confirmed by a comprehensive housing market analysis of the Durham-Chapel Hill area by the U.S. Department of Housing and Urban Development, published in June 2019, which reported that the share of single family homes in the area's rental market increased from 30% in 2010 to 33% in 2019.[1] A search on a popular real estate listing site realtor.com[2] reveals that as of this filing there are currently over 60 listings of single family homes available for rent in Chapel Hill.

14. Accordingly, having satisfied themselves that the Town's zoning regulations as well as their HOA covenants did not bar homeowners from leasing their property, in October 2016, the Valentines began hosting short term vacation rentals at their home through the two short-term rental platforms. Their first listing on Airbnb went live on October 11, 2016. They received their first booking inquiry on October 14, 2016. They received their first booking on October 25, 2016. Their first STR tenant arrived on November 4, 2016 for a two night stay. During the period from October 2016 to December 2021, the Valentines hosted 71 STR stays for 313 nights at the Subject Property through Airbnb.

15. The Valentines also listed their Home on HomeAway (a vacation rental marketplace now rebranded as Vacation Rentals by Owner (VRBO)) on October 31, 2016. They received their first booking enquiry through VRBO on November 1, 2016. Their first booking was received on November 5, 2016. Their first STR tenant arrived on December 20, 2016 for a

[1] https://www.huduser.gov/portal/publications/pdf/Durham-ChapelHillNC-CHMA-19.pdf
[2] https://www.realtor.com/apartments/Chapel-Hill_NC/type-single-family-home

seven nights stay. During the period from November 2016 to December 2021, the Valentines hosted 25 STR stays for 199 nights at the Subject Property through VRBO.

16. The Valentines openly listed and advertised the Subject Property on AirBnB and VRBO short term property rental sites as ideal for families and provided dedicated STRs at the Subject Property to single family tenants continuously for over five years since October 2016. The entire Subject Property was provided as a dedicated STR and all short term tenants were single families or other residential tenants, due to which the Subject Property continued to be used as a single family residence in compliance with applicable zoning regulations in R-2 zone.

17. Unlike hotels or rooming houses, no food and beverage, cleaning, housekeeping or room services were provided to STR tenant families at the Subject Property. Cleaning was done once before and once after the rental period and the families were able to use the kitchen to cook their own food. Utilities and internet services were made available for the use of the STR family tenants who paid the STR occupancy rent for the duration of their stay to the respective online platforms, AirBNB or VRBO, who deducted applicable fees and taxes at source and paid the balance amount paid by the tenant for each stay to the Valentines.

18. Most families who stayed at the Subject Property visited Chapel Hill for a variety of reasons such as medical treatment of a family member at UNC or Duke Hospital, attending family gatherings, reunions, engagements, marriages, graduations, or to meet their children who were attending college in the area or for house hunting while they were in the process of relocating to the area. The vast majority of these tenant families were from out of state. These families found STRs to be more suitable than hotels due to the additional space and amenities, the homely environment that was more conducive to socializing, the availability of a kitchen to cook their own

food, the ability to socially distance from strangers, and the fenced backyard that was suitable for pets.

19.     Over the past five years, there have been a total of 96 such short term rental stays for 512 nights at the Subject Property, of which 71 stays were through AirBNB and 25 stays through VRBO. At various times the Valentines were recognized as Superhost by AirBNB and Premier Partner by VRBO in recognition of meeting the respective platforms' hosting standards and earning very favorable reviews from short term single family tenants.

20.     The income derived from rental of the Subject Property since October 2016 exceeds $75,000.00.

21.     The Valentines continued to pay applicable property and other taxes and the Subject Property was insured for short term rental stays through Prosper Insurance. North Carolina state and county sales and use taxes as well as City and County Occupancy taxes applicable on each short term rental was collected by the property rental platforms AirBnB[3] and VRBO[4] and paid to the State, County and Town on behalf of the Valentines.

22.     As the Subject Property was openly listed on public short term rental sites and occupancy and other applicable taxes paid through the STR platforms, the Town had both actual and constructive notice of the leasing of the Subject Property as a dedicated STR since October 2016. No objection was ever received from the Town for the operation of a dedicated STR at the Valentine's Subject Property since 2016 while the Town continued to receive occupancy and other taxes for over five years.

---

[3] https://www.airbnb.com/help/article/2320/occupancy-tax-collection-and-remittance-by-airbnb-in-north-carolina
[4] https://help.vrbo.com/articles/What-lodging-taxes-do-you-collect-for-North-Carolina#:~:text=We%20collect%20the%20following%20State,State%20Sales%20%26%20Use%20Tax

23.    Over time, the Valentines invested in upgrading their home in Chapel Hill to provide various amenities to make it more suitable for STRs. During the period from August 2016 to August 2021, the Valentines invested approximately $35,000 in amenities including a new roof, new luxury vinyl plank flooring, deck repair and painting, backyard fence repair and painting, backyard garden, HVAC, dishwasher and other appliances as well as maintaining and upgrading furniture, lighting, linen and landscaping. The Valentines hired contractors to do substantial renovations including plumbing, electrical, flooring, and general repair.

24.    The Valentines also made specific renovations for vacation rentals such as security cameras outside the home, Nest digital thermostats, new smart televisions, and a remote access wifi lock with security codes for keyless entry for the front door.

25.    On or around May 2021, the Valentines learned that the Town was considering enacting an ordinance to ban investors from owning and operating STRs in residential zones in Chapel Hill (the "STR Ordinance"). They sent a detailed letter to the Chapel Hill Town Council on May 28, 2021, explaining that (i) they had been legally operating a dedicated STR at the Subject Property in Chapel Hill located in the R-2 residential zone for over five years since 2016; (ii) they are not a corporate investor and had owned only the Subject Property since 2004 when it was their primary home; (iii) local governments have delegated powers to regulate land use through zoning but it is impermissible for the Town to use zoning regulations to regulate the type of ownership; and (iv) the proposed ordinance would unjustifiably restrict them from exercising their property rights to earn rental income which would cause them economic damage.

26.    They also informed the Town in their letter that (i) their dedicated STR had been in operation since 2016; (ii) they had made significant investments in upgrading their property for use as an STR; (iii) there were no problems on account of STRs in Chapel Hill that warranted

banning them; (iv) NC courts have repeatedly held that zoning regulations are meant to regulate land use rather than type of ownership; (v) banning STRs would be an *ultra vires* act that would directly cause them economic damage in terms of lost investment and rental income; and (vi) dedicated STRs meet a real need of traveling families for privacy, safety, security, social distancing, comfort, and economy at a level that hotels are often unable to offer.

27.  The Valentines attended at least two public meetings held virtually by the Town Council wherein they made oral submissions reiterating their opposition to the proposed ordinance that would ban dedicated STRs in residential zones in Chapel Hill.

## HISTORY AND ADOPTION OF THE STR ORDINANCE

28.  Since the founding of Airbnb in August 2008, short-term rentals have become increasingly popular nationwide. Short-term rental websites such as Airbnb became popular for travelers wanting a furnished apartment or house rather than a hotel room.

29.  In the late 2010's, the Chapel Hill hotel industry began to lobby the Town to restrict or ban short-term rentals.

30.  In or about 2019, the Town appointed a task-force to consider regulation of short-term rentals.

31.  The initial focus of task-force discussions focused on regulation or prohibition of what were called "investor-owned" short-term rentals.

32.  The task-force used the term "investor-owned" to mean a short-term rental unit whose owner does not live on the property.

33.  A legal consultant advised the task-force that regulation based on type of owner was not legal.

34.  After receiving this advice, the task-force changed the term "investor-owner" to "dedicated."

35.  The task-force then began to use the term "dedicated" to mean a short-term rental unit whose Owner does not live on the property.

36.  In her presentation to Orange County[5], the legal consultant referred to "dedicated" STRs as Whole-House STR where the entire dwelling unit is rented while the host is away from the property and that such properties may be used as permanent vacation rentals. She cautioned that there should be no "unreasonable and confiscatory" property regulations under the "guise of the police power." *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 387 (1926). She also advised local governments to be mindful of "takings" challenges if banning STRs and to consider "grandfathering" in STRs.

37.  The terms "investor owned", "dedicated", and "whole-house" STRs refer to STRs where the homeowner does not reside permanently. All these terms discriminate between homeowners based on the type and residency of homeowner, rather than the use of the property, which is an impermissible use of zoning powers delegated to local governments. See *Clegg v. City of Durham*, No. COA06-700 (N.C. App., 2007).

38.  After the task force concluded its work, the Town held public hearings to consider an amendment to the LUMO to, among other things, prohibit dedicated short- term rentals in certain zoning districts, including R-2.

39.  On May 18, 2021, the STR Subcommittee of the Town's Planning Commission Advisory Board submitted its report opposing the proposed ordinance on the ground that it "was

---

[5] http://orangecountync.gov/DocumentCenter/View/6697/Short-Term-Rentals-and-Airbnb-2019-Regulation?bidId=

inconsistent with the Town's Comprehensive Plan." A true and accurate copy of this report is attached hereto as Exhibit C. The report cited several bases, including that:

a.    the proposed ordinance was "inconsistent with the Town's Comprehensive Plan."

b.    the concerns expressed "appear to be primarily based on incidents in other parts of the country, not on data from Chapel Hill."

c.    there was no evidence that short-term rentals affected property values, neighborhood character, or parking availability "more than student rentals."

d.    there was no evidence that short term rentals "[h]ave been more damaging to hotelier's profits than the addition of new hotels in recent decades.

e.    there was no evidence that short term rentals are responsible for any increase in gun violence.

f.    "we do not have the data necessary to require separation of types of STRs from one another, or to relegate certain STRs to areas with particular zoning classifications.

g.    "[i]t would be inappropriate to create a distinction between types of STRs without data to support the policy."

h.    regulation should be done "based on fairness and Data."

40.   The committee noted that many STRs have been operating in Chapel Hill for over twenty years. Many of these operators are residents that opened their doors to renters so that they could afford to stay in their homes. These individuals will need to be protected by a 'Grandfather' clause that allows them to continue operation.

41. The committee urged the Town to collect the data necessary to address areas of concern necessary to write a proper amendment to the LUMO.

42. The committee also suggested that STRs should be allowed in all residential zones and that existing STRs be allowed to continue.

43. The Town Council did not do the studies as suggested and ignored the recommendations made by its own Planning Commission while trampling over homeowners' constitutional, statutory and common law rights, without due respect for the rule of law, in their haste to pander to the local hotel lobby's desire to eliminate any competition and freedom of choice for their customers, presumably so that the hotel lobby could continue to sell high-priced, cramped hotel rooms to captive consumers.

44. At its meeting held on May 4, 2021, the Town's Planning Commission voted to recommend that the proposed Land Use Management Ordinance Text Amendment, regarding Short Term Rentals (STRs), was inconsistent with the Town's Comprehensive Plan.

45. In several public meetings that were organized by the Town, Council Member Stegman proposed that any ordinance enacted should include a provision grandfathering existing STRs to protect the interests of existing STR owners. This proposal was in line with the Town's legal consultant's presentation.[6] No member of council or town staff objected to this recommendation in any public meeting. No additional public debate was held on the idea of grandfathering. However, no such provision was ever inserted into the draft ordinance. Upon information and belief, Town Council and planning staff determined, outside the public eye, that a grandfathering provision was not required because the staff erroneously believed that existing STR use was illegal in Chapel Hill Town under its existing zoning regulations. They based this

_____

[6] http://orangecountync.gov/DocumentCenter/View/6697/Short-Term-Rentals-and-Airbnb-2019-Regulation?bidId=

belief on the ground that the zoning regulations did not explicitly permit STRs. However, the Town has offered no explanation for why a new ordinance was required, at considerable expense of taxpayer funds, to ban dedicated STRs if the existing regulations already banned STRs.

46.     The Town's ordinance added new definitions and new use categories for short term rentals in the Use Matrix to ban them in specific zones, which is further evidence that the Town did not distinguish between short term and other rentals previously.

47.     The Town's interpretation of omnibus prohibitions under its zoning regulations is without any legal basis as held by the North Carolina Supreme Court in its opinion in *Byrd v. Franklin Cnty*., 778 S.E.2d 268 (N.C. 2015). In that case, Franklin County similarly had a Unified Development Ordinance (UDO) which stated that "[u]ses not specifically listed in the Table of Permitted Uses are prohibited." Our Supreme Court held that "the UDO's provision prohibiting all uses not explicitly allowed in the ordinance is in derogation of the common law and is without legal effect."

48.     Similarly here, the provision in LUMO 3.7.1 that "Uses of land or structures which are not expressly listed in section 3.7.2 as permitted principal uses, permitted accessory uses, permitted uses in a conditional zoning district, or permitted special uses in a zoning district or planned development are prohibited uses and shall not be established in that district or planned development", which predated the STR Ordinance, is without legal effect.

49.     The Town Council disregarded its Planning Commission's recommendations as well as judicial precedent and opposition from numerous STR owners expressed at its virtual public meetings and unanimously voted at its June 23, 2021 meeting to enact the STR Ordinance. Among other things, the STR Ordinance banned the operation of dedicated STRs in residential zones including R-2 zone where the Valentines' Subject Property was located. To avoid having to

pay compensation for such regulatory taking, the Town included an amortization clause in the ordinance which provided a grace period of 18 months during which time dedicated STR operators had to come into compliance with the ordinance.

50.   On June 23, 2021, the Town of Chapel Hill made text amendments to its Land Use Management Ordinance Sections 3.7, 4.9, 6.27, and Appendix A to ban homeowners from offering dedicated STRs of property they own in R-LD5, RT, R-Ld1, R-1A, R-1, R-2, R-2A, R-3, R-4, R-5, and R-SS-CZD residential zones. The new ordinance went into effect immediately.

## PROVISIONS OF THE STR ORDINANCE

51.   Under the STR Ordinance, existing STRs that are not a permitted use were allowed to continue operating as a short-term rental for eighteen months after the effective date of the ordinance, provided its continued operation on or after December 23, 2022, would be in violation of the LUMO.

52.   The STR Ordinance defines an STR as "[a] dwelling unit rented in whole or in part for fewer than thirty (30) consecutive days for a fee or other valuable consideration …"

53.   It defines a primary residence to include a dwelling unit, "in which the host resides a majority of the year (183 days per year or 50 percent or more of the time)."

54.   A dedicated Short-term rental (STR) is defined as "[a] residential dwelling unit(s) located on a property not used as a primary residence in which the dwelling unit is rented in whole or in part for fewer than thirty (30) consecutive days for a fee or other valuable consideration …"

55.   The amended Use Matrix in Table 3.7-1 prohibits dedicated short term rentals in R-2 residential zone.

56.   The Valentines are currently residents of Florida where they maintain their primary residence. The Subject Property in Chapel Hill is currently their second home where they do not

reside for a majority of the year and it would therefore not meet the definition of a primary residence under the ordinance. The Subject Property is located in the R-2 zone.

57. The Subject Property is rented in whole to single families for short stays that have generally ranged from two to ten nights with an average stay of around four to five nights. Only one out of the past 93 stays exceeded thirty (30) consecutive days.

58. Since the enactment of the Town's ordinance on June 23, 2021, making text amendments to its Land Use Management Ordinance (LUMO), the use of a non-primary residence to operate a dedicated STR is prohibited in R-2 zone. Since the Valentine's Subject Property is a non-primary residence located in R-2 zone, the amended LUMO prohibits its use as a dedicated STR from the date of its enactment on June 23, 2021, unless approved for non-conforming use or variance.

59. The ordinance also requires that a short-term rental (STR) permit shall be assigned to each residential dwelling unit that satisfies the requirements of the ordinance and is used as a primary residence STR or dedicated STR for more than fourteen (14) days per calendar year. A permit number shall be assigned to each STR, and such STR permits are required to be renewed annually before the expiration date.

60. Any person who operates a short-term rental property without a valid STR permit shall be in violation of LUMO Section 4.9.8. The penalties and remedies for violations of this ordinance are set forth in LUMO Section 4.13

61. As a result of this ordinance making text amendments to the LUMO, a property owner who was already exercising her right to legally offer STRs in R-2 and other residential zones would be prohibited from continuing to do so without a non-conforming use approval.

62. The Valentines have been operating a dedicated STR at their Home in the R-2 zone of Chapel Hill since October 2016, at which time the LUMO did not prohibit such dedicated short term rentals in any zone.

## FIRST CLAIM FOR RELIEF
Request for declaratory judgment
Arbitrary and Capricious Enactment

63. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

64. Plaintiff asks that the Court declare that the STR Ordinance is not valid in that its enactment was arbitrary and capricious, as follows.

65. The Town had no rational basis for enacting the STR Ordinance.

66. The Town has no evidence of any problems created by STRs in terms of increased crimes, littering, public nuisance or other complaints. Even if such complaints existed, which they do not, the Town has alternate remedies in the form of other ordinances to tackle these issues.

67. The STR Ordinance was a solution in search of a problem. Use of residential property for short-term rentals had not caused problems, such that there was no need for regulation.

68. The Town's own records show a lack of problems with use of residential property for short-term rentals.

69. The STR Ordinance does not regulate use of property on the basis of land use, but on the identity and nature of the owner, which is not regulation of land use and development.

70. The STR Ordinance does not regulate use of property on the basis of land use, but on the length of rental, which is not regulation of land use and development.

71. The STR Ordinance bears no relation to the Town's goals as stated in the ordinance itself.

72. The STR Ordinance is, in fact, contrary to the Town's stated goals, namely:

a. Short-term rentals provide a welcoming and friendly atmosphere by providing home-like environments for visitors while enabling them to socially distance from other people, and the STR Ordinance restricts such environments.

b. An intended effect of the STR Ordinance is to foster the success of certain local businesses, such as hotels and tourist homes, by banning or restricting owners of residential property from renting their property for less than an arbitrary period of time, which is not a proper purpose of municipal government.

c. The STR Ordinance inhibits one of the purposes of the Town's comprehensive plan, providing a range of neighborhood types to address various needs.

d. The STR Ordinance does not affect future land use in that it governs type of owner and length of rental rather than land use.

e. The STR Ordinance inhibits economic prosperity and social equity by denying access to income to residents wishing to rent their properties on a short-term basis without any basis in land use.

f. The goal of protecting neighborhoods from stormwater runoff, light and noise pollution, and traffic is not relevant to short-term rentals, in that short-term rentals do not affect stormwater runoff, and they do not cause light and noise pollution or increased traffic.

g. The STR Ordinance restricts the opportunities for Chapel Hill residents to supplement their income and afford housing in the community.

h. The Town's findings on residential zoning districts, including R-4, that restricting dedicated short-term rentals will prevent the conversion into short-term rentals, maintain housing for full-time residents, reduce nuisances, and

preserve neighborhood character, are based on improper zoning by type of ownership rather than land use.

      i.      The findings in the preceding subparagraph are also belied by the lack of history of nuisance reports from short-term rentals whereas rentals of more than 30 days, to students and otherwise, have a long and documented history of nuisance reports.

      j.      On the same basis, the STR Ordinance does not help to promote the health, safety, and general welfare of the residents of the Town of Chapel Hill.

      k.      Otherwise to be shown at the trial of this matter.

73. The real goal of the STR Ordinance was to protect the business interests of local hotels.

74. In fact, local hotels are dedicated short-term rentals, in that they typically rent rooms for less than 30 days and their owners do not live on site. While the hotel industry has lobbied the Town to prohibit short term rentals by individual homeowners, big hotel chains themselves offer such dedicated short term rental homes in many locations throughout the country and abroad.

75. In April 2019, Marriott International announced Homes & Villas by Marriott International, a home rental initiative offering 2,000 premium and luxury homes located in over 100 destinations throughout the United States, Europe, the Caribbean and Latin America.[7] Marriott's dedicated STR business has grown significantly from just 2,000 whole-home accommodations at launch to around 25,000 globally by March 2021.[8] Choice Hotels, the parent

---

[7] https://news.marriott.com/news/2019/04/29/marriott-international-launches-home-rentals-in-over-100-markets
[8] https://www.travelweekly.com/Travel-News/Hotel-News/Short-term-vacation-rentals-a-bright-spot-in-hospitality

company of brands that include Cambria and Comfort Inn, has been offering vacation rentals since 2016, and now has more than 30,000 private residences, cabins and resort-style accommodations in 50 vacation destinations across the US, in cities like Myrtle Beach, South Carolina and Lake Tahoe, California.9 Other hotel chains like Wyndham and Accor also offer STR homes.10

76.   It is obvious that the hotel industry itself has a strategy of opening dedicated STRs across the country mostly in major tourist destinations while they lobby local governments to stop individuals from offering dedicated STRs in smaller towns. This strategy will deny consumers the freedom of choice and stifle competition while forcing consumers to stay in high priced hotel accommodations. The lobbying initiative by the hotel industry in Chapel Hill Town to ban individual homeowners from offering STRs is an attempt to misuse regulation by local government to unfairly limit competition while they reap the benefits of dedicated STRs across the country. Such unfair restrictions on competition bear no relation to the Town's goals as stated in the ordinance itself and local government powers are not to be misused for placing unlawful restraints on competition in violation of homeowners' property rights that are derived from constitutional, statutory and common law.

77.   The STR Ordinance ignores legitimate land-use distinctions and creates arbitrary and absurd definitions to ban some short-term rentals, restrict others, and allow other short-term rentals to continue unheeded but with competition eliminated or restricted unlawfully by the Town.

78.   The STR Ordinance arbitrarily and capriciously and unlawfully provides for zoning based on type of owner and residency rather than land use.

79.   The STR Ordinance arbitrarily and capriciously and unlawfully provides for zoning based on length of rental.

---

9 https://thepointsguy.com/news/hotel-brands-homesharing/
10 Id.

80.  The STR Ordinance arbitrarily imposes restrictions on where property owners can live in order to rent their property for less than 30 days.

81.  Enactment of the of STR Ordinance was otherwise arbitrary and capricious, to be shown at the trial of this matter.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment
### Denial of constitutional due process

82.  The allegations in the preceding paragraphs are incorporated here as if fully set forth.

83.  Plaintiffs ask that the Court declare the STR Ordinance not valid on the basis that it is a violation of Plaintiffs' constitutional right to due process.

84.  The North Carolina State Constitution, Article l, § 19 (the "Law of the Land" clause), provides: "No person shall be ... deprived of his life', liberty or property, but by the law of the land."

85.  This is synonymous with the Fourteenth Amendment to the United States Constitution, which provides: "[N]or shall any State deprive any person of his life, liberty, or property, without due process of law."

86.  These due process provisions provide protection against the arbitrary action of government, including the exercise of power without reasonable justification in the service of a legitimate government objective.

87.  Zoning regulations promulgated under the police powers of a municipality restrict the use of private property to promote the public health, the public safety, the public morals, or the public welfare. However, a municipality cannot, under the guise of protecting the public, arbitrarily interfere with the use of private property or prohibit lawful occupations or impose unreasonable and unnecessary restrictions on them.

88. Zoning and similar regulations are subject to the limitations on legislative power forbidding arbitrary and unduly discriminatory interference with the rights of property owners. Competing with the State's constitutional authority over land-use are the property owners constitutional entitlement to due process of law which forbids the State or its local governing bodies from arbitrarily or capriciously restricting owners' rights to use their property for lawful purposes. U.S. Const. amend. XIV, § 1; N.C. Const. art. I, § 19; *In re Ellis*, 277 N.C. 419, 424, 178 S.E.2d 77, 80 (1970). Also see *City of Wilmington v. Hill*, 189 N.C. App. 173 (2008) and *Clegg v. City of Durham*, No. COA06-700 (N.C. App., 2007)..

89. The requirement for homeowners to reside on their property to be able to operate a primary residence short term rental infringes on their fundamental constitutional right of liberty. The Town has not shown any compelling interest for this regulation and this regulation fails the strict scrutiny standard laid down by the U.S. Supreme Court decisions in *United States v. Carolene Products Co.*, 304 U.S. 144 (1938), and *Korematsu v. United States*, 323 U.S. 214 (1944).

90. Short-term rentals in the Town of Chapel Hill have posed no peculiar danger to the public health, safety, morals, or welfare, as opposed to any other property use, including hotels.

91. The STR Ordinance is an arbitrary and unduly discriminatory interference with the rights of property owners, including Plaintiffs.

92. The Town has arbitrarily interfered with use of private property, rental of residential units in residential zones for less than an arbitrary number of days.

93. The Town has prohibited some property owners from renting their residences for less than an arbitrary number of days and posed unreasonable and unnecessary restrictions on other such rentals.

94. The Town, under the guise of protecting the public, arbitrarily interfered with the Valentines' use of their property for short-term rentals, and either prohibited lawful short-term rentals or imposed unreasonable and unnecessary restrictions on them.

95. The only danger posed by short-term rentals was to the desire of some businesses in the Town to avoid competition from residential short-term rentals and the willingness of the Town to bow to pressure from such businesses.

## THIRD CLAIM FOR RELIEF
### Declaratory Judgment
### Denial of equal protection of law

96. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

97. Article I, Section 19, of the North Carolina State Constitution provides: "No person shall be denied the equal protection of the laws."

98. The Fourteenth Amendment to the United States Constitution makes it unlawful for the state to "deny to any person within its jurisdiction the equal protection of the laws"

99. Enactment of the STR Ordinance was an intentional and purposeful decision by the Town.

100. In enacting the STR Ordinance, the Town has treated Plaintiffs differently from other similarly situated property owners:

   a.    As to the distinction between "dedicated short-term rentals" and "primary residence short-term rentals, on the basis that they do not live in the Subject Property.

   b.    As to the regulation of rentals by length of rentals, on the basis of length of rental.

c.      By definitions added to the LUMO in the STR Ordinance that create artificial distinctions with no rational relationship with any legitimate government interest, or any basis in reality, between land uses that are continued to be allowed and Plaintiffs' use of the Subject Property for short-term rentals.

d.      By denying them the right to use their property in accordance with the zoning district in which the Subject Property is located, when other uses that are substantially similar or the same as short-term rentals are allowed to continue in that district.

e.      By continuing to allow short-term rentals in R-4 and other residential zoning districts by simply adding a phrase to the definition of "tourist home" to provide that tourist homes, which are engaged in short-term rentals and are similarly situated to the Subject Property, are not short-term rentals covered by the STR Ordinance.

f.      Otherwise to be shown at the trial of this matter.

101. There is no rational relationship between the STR Ordinance and any legitimate government purpose.

102. The Town's own records and studies fail to show any legitimate problem to be solved by the STR Ordinance.

103. The only problem to be solved by the STR Ordinance was pacifying the hotel industry and the Chamber of Commerce by reducing competition in hotels and accommodations, which is not a legitimate government purpose or a proper basis for regulation.

104. In enacting the STR Ordinance, the Town has denied Plaintiffs the equal protection of law.

105. Plaintiffs ask the Court to declare that the STR Ordinance is not valid pursuant to the Article I, § 19, of the North Carolina State Constitution and the Fourteenth Amendment to the United States Constitution.

**FOURTH CLAIM FOR RELIEF**
<u>Request for declaratory judgment</u>
<u>Denial of Vested Rights</u>

106. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

107. Plaintiffs ask that the Court declare that the STR ordinance is not valid in that it denies Plaintiffs' vested rights.

108. Article I, Section 19, of the North Carolina State Constitution (the "Law of the Land" clause) protects Plaintiffs' right to procedural and substantive due process and prohibits municipalities from retroactively depriving a person of a vested property right.

109. The vested rights doctrine recognizes that where property owners have reasonably made a substantial expenditure of money, time, labor, or energy in a good faith reliance of a government approved land-use, they have a vested right. See *Browning-Ferris*, 126 N.C.App. at 171, 484 S.E.2d at 414; and *Russell v. Guilford County*, 100 N.C.App. 541, 543, 397 S.E.2d 335, 337 (1990).

110. Plaintiffs have a vested right in use of their property for short-term rentals, in that:

 a. Plaintiffs' openly advertised and public use of the Subject Property for short-term rentals long predates the enactment of the STR Ordinance.

 b. Plaintiffs have made substantial expenditures including maintaining the property specifically for short-term rentals.

 c. The expenditures were made in good faith reliance on short-term rentals being a lawful use of their property at all times.

d.     Occupancy and other taxes were paid to the Town for the property and the Town had both actual and constructive notice of the use of the property as an STR for over five years.

e.     If the Town is allowed to deny Plaintiffs the right to use their property for short-term rentals, this will result in a detriment to Plaintiffs, including loss of property value, rental income and investment.

**FIFTH CLAIM FOR RELIEF**
Request for declaratory judgment
Ultra Vires

111. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

112. The Town's authority to enact the STR Ordinance, the LUMO, and all other zoning and land use regulation is pursuant to Chapter 160D of the North Carolina General Statutes, which by its plain language provides authority for "development regulations" and provides that the chapter also applies to "any other local ordinance that substantially affects land use and development."

113. As the North Carolina Supreme Court has stated: "A municipality has no inherent power to zone its territory and possesses only such power to zone as is delegated to it by the enabling statutes. The authority to enact zoning ordinances is subject to the limitations imposed by the enabling statute and by the Constitution. These limitations forbid arbitrary and unduly discriminatory interference with property rights in the exercise of such power. Thus, a zoning ordinance or an amendment thereto which is not adopted in accordance with the enabling statutes is invalid and ineffective." *Heaton v. City of Charlotte*, 277 N.C. 506, 513, 178 S.E.2d 352, 356–57 (1971).

114. Pursuant to N.C.G.S. § 160D-702, "a zoning regulation may regulate and restrict the height, number of stories, and size of buildings and other structures; the percentage of lots that may be occupied; the size of yards, courts, and other open spaces; the density of population; the location and use of buildings, structures and land." Provisions for rights-of-way and recreation space and facilities are also allowed.

115. No authority is granted for zoning regulations to specify the type of owner or the length of rental. The North Carolina Court of Appeals in *City of Wilmington v. Hill*, 189 N.C. App. 173 (2008) held: "If a use is permitted, as here, it is beyond the power of the municipality to regulate the manner of ownership of the legal estate." In other words, once the city has decided to allow short-term rentals in residential districts, it cannot constitutionally require the property to be owner-occupied or discriminate between owner-occupied and non-owner-occupied rentals.

116. Courts in North Carolina have held that leasing a home is not a commercial activity. "Under North Carolina case law, restrictions upon real property are not favored. Ambiguities in restrictive covenants will be resolved in favor of the unrestricted use of the land. A negative covenant, prohibiting business and commercial uses of the property, does not bar short-term residential vacation rentals." *Russell v. Donaldson*, 731 S.E.2d 535 (N.C. Ct. App. 2012).

117. Among out-of-state courts, the majority have held short term rentals to be non-commercial activity. The Wisconsin Supreme Court has joined the courts that have found short-term home rentals to be consistent with a covenant prohibiting "commercial activity." *Forshee v. Neuschwander*, 914 N.W.2d 643 (Wis. 2018). The Colorado Court of Appeals held that an association's covenants stating that homes could not be occupied or used for any commercial or business purpose did not prohibit a homeowner from renting out his property for short-term vacation rentals. *Houston v. Wilson Mesa Ranch Homeowners Association, Inc.*, 2015 WL

4760331 D. Colo. August 13, 2015. The Arkansas Supreme Court joined the courts that find Airbnb to be a residential rather than a commercial use of property. *Vera Lee Revocable Trust v. O'Bryant*, 537 S.W.3d 254 (Ark. 2018). Accord, *Slaby v. Mountain River Estates Residential Ass'n, Inc.*,100 So. 3d 569 (Ala. Ct. Civ. App. 2012). Other courts find short term rentals to be compatible with "residential use" and not a violation of such restrictive covenants at all. *Wilkinson v. Chiwawa Communities Ass'n*, 327 P.3d 614 (Wash. 2014); *Santa Monica Beach Property Owners Ass'n v. Acord*, 219 So.3d 111 (Fla. Dist. Ct. App. 2017).

118. Further, the duration of lease is not determinative as it does not change the fact that the home is still being used for single family occupancy, as required under applicable zoning regulations. Whether the lease is for one day or ten years, as long as the home is occupied by single families, the zoning requirements for single family homes are met. There was no provision in the Chapel Hill Town's zoning regulations to restrict the duration of any home lease or barring short term rentals and applying such restrictions would restrict homeowners' common-law property rights that enable them to restrict entry to and generate income from their property. "Since zoning ordinances are in derogation of common-law property rights, limitations and restrictions not clearly within the scope of the language employed in such ordinances should be excluded from the operation thereof." *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966). *Capricorn Equity Corp. v. Town of Chapel Hill Bd. of Adjust.*, 334 N.C. 132, 138-39, 431 S.E.2d 183, 188 (1993). *Westminster Homes v. Town of Cary Zoning*, 354 N.C. 298, 304 (N.C. 2001)

119. In another case, the North Carolina Court of Appeals put it this way: "zoning is not the regulation of ownership of land or the structures thereon. Rather, zoning only deals with regulation of what occurs on real property." *Clegg v. City of Durham*, No. COA06-700 (N.C. App., 2007). There is no statutory authority for an ordinance that regulates the occupancy of property.

120. The Town did not have authority to enact the STR Ordinance.

## SIXTH CLAIM FOR RELIEF
### Request for declaratory judgment
### Open Meetings

121. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

122. Chapter 143, Article 33C of the North Carolina General Statutes, the Open Meetings Law, requires that hearings, deliberations and actions of public bodies be conducted openly and with notice.

123. Although Council Member Stegman and the advisory Planning Commission both recommended that any ordinance enacted contain a provision for grandfathering of existing STRs, such a provision was never publicly debated and was not included in the final ordinance.

124. The decision not to grandfather existing uses was made outside the public eye in violation of the Open Meetings Law.

125. Under N.C. Gen. Stat. § 143-318.16A(a), this Court has the authority to declare null and void any action of a public body taken in violation of the Open Meetings Law.

## SEVENTH CLAIM FOR RELIEF
### Request for declaratory judgment
### Dormant Commerce Clause

126. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

127. A requirement for owner-residency is a violation of the United States Constitution Article I, Section 8, Clause 3, generally known as the Commerce Clause. The Commerce Clause gives Congress the power "[t]o regulate Commerce ... among the several States." Although this is phrased as an affirmative power, the courts have long recognized "that it also limits the power of the States to erect barriers against interstate trade." *Dennis v. Higgins*, 498 U.S. 439, 446, 111 S.Ct.

865, 112 L.Ed.2d 969 (1991) (quoting *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980)).

128. This passive or negative aspect of the Commerce Clause (or Dormant Commerce Clause) prevents states (or their subdivisions such as cities) from discriminating against out-of-state interests. In this context, discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). "[W]hen a state statute discriminates against interstate commerce, it will be struck down unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Yamaha Motor Corp. v. Jim's Motorcycle, Inc.,* 401 F.3d 560, 567 (4th Cir.2005) (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992)). There is no question that leasing of real estate can be interstate commerce. See, *e.g.*, 15 U.S.C. §1703 (forbidding certain sales or leases of real property in interstate commerce).

129. An ordinance that establishes unfavorable treatment for short-term rentals in which the owner does not live on-site has the effect of discriminating against out-of-state owners of real property. While a local owner may or may not prefer to reside on-site while engaging in short-term leasing of his property, he is able to make that choice. However, it is simply not possible for an out-of-state owner such as the Plaintiffs to reside on the property.

130. Further, a large majority of short term rental tenants are out-of-state actors who travel from other states to Chapel Hill, North Carolina for various reasons. Prohibiting dedicated short term rentals in residential areas in Chapel Hill restricts the ability of such out-of-state persons to travel and engage in interstate commerce by limiting their choice of suitable family accommodation.

131. Such discrimination against out-of-state homeowners and short term rental tenants requires some justification that would protect it from the operation of the Dormant Commerce Clause. The Town is not a market participant and no exceptions apply. Here, the Town has failed to provide any justification sufficient to overcome the presumption of discrimination against out-of-state interests which unduly and impermissibly burdens interstate commerce.

### EIGHTH CLAIM FOR RELIEF
### (Declaratory and Other Relief: Ultra Vires, In Excess of Powers, and Preempted by State Statute, and not in public interest)

132. The allegations in the preceding paragraphs are incorporated here as if fully set forth.

133. The authority to regulate vacation rentals is exercised by the state pursuant to the Vacation Rental Act, N.C.G.S. §§ 42A-1 et seq.

134. N.C.G.S. § 160D-1207(c) inter alia states as follows: "In no event may a local government do any of the following: (i) adopt or enforce any ordinance that would require any owner or manager of rental property to obtain any permit or permission under Article 11 or Article 12 of this Chapter from the local government to lease or rent residential real property or to register rental property with the local government, except for those individual properties that have more than four verified violations in a rolling 12-month period or two or more verified violations in a rolling 30-day period, or upon the property being identified within the top ten percent (10%) of properties with crime or disorder problems as set forth in a local ordinance, …"

135. N.C.G.S.§ 160D-101(a) states as follows: "The provisions of this Article shall apply to all development regulations and programs adopted pursuant to this Chapter or applicable or related local acts. To the extent there are contrary provisions in local charters or acts, G.S. 160D-

111 is applicable unless this Chapter expressly provides otherwise. The provisions of this Article also apply to any other local ordinance that substantially affects land use and development."

136. Since zoning regulations substantially affect land use and development, the provisions of N.C. Gen. Stat. § 160D-1207(c) would apply pre-empting local government from regulating vacation rentals including STRs.

137. To the extent there is any ambiguity in existing law, it is to be resolved in favor of the Valentines' free use of their property. See *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E.2d 174 (1981)

138. In a recent case, *Schroeder v. City of Wilmington* FILE NO. 19-CVS-4028, the Plaintiffs had purchased a property in Wilmington, NC, with the purpose to use it as a short-term rental. Following the passage of City Code § 18-331, the Plaintiffs lost the ability to rent their property through the lottery and filed suit to challenge the ordinance. The Superior Court of New Hanover County ruled in favor of the Plaintiffs, granting their Motion for Summary Judgment, and finding that City Code § 18-331 was preempted by state law.

139. The Court found that state law preempted the Wilmington ordinance and that Wilmington's requirement that each short-term rental register with the City was prohibited. The Court struck down the ordinance in its entirety – rather than simply striking the registration requirements and allowing the remainder.

140. Additionally, the Ordinance is void and unenforceable as to the Valentines specifically since their property has had no "verified violations" as that term is defined, and it is not within the top 10% of properties with crime or disorder problems as set forth in a local ordinance.

141. Defendants/Respondents nevertheless have enacted, and likely will enforce in the future, their Ordinance.

142. Therefore, an actual controversy exists between the parties.

143. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from the uncertainty and controversy giving rise to this proceeding.

144. The ordinance banning STRs is not in the public interest. Several families who visit Chapel Hill for medical treatment of their loved ones at nearby hospitals prefer to stay in STRs rather than hotels for reasons of economy, comfort and the ability to cook their own healthy food. In this time of Covid pandemic, families are better able to socially distance in a dedicated STR without exposure to strangers, which is not possible in a hotel where a large number of people are housed in rooms in close proximity. Pet owners appreciate the convenience of a fenced backyard for their pets while many hotels do not allow guests to bring their pets.

145. Accordingly, under N.C. Gen. Stat. §§ 1-253 et seq., and Rule 57 of the North Carolina Rules of Civil Procedure, the Valentines pray for declaratory and related relief declaring that the Ordinance is ultra vires, in excess of statutory authority, and preempted and thus void and unenforceable, as well as not in the interest of public health and welfare.

146. The Valentines are also entitled to damages, both nominal and compensatory, for the violation of their rights by Defendants/Respondents through enforcement of the Ordinance.


WHEREFORE, Plaintiffs pray the Court:

1.  Enter a declaratory judgment finding that the STR Ordinance is unlawful, preempted, and unconstitutional, both facially and as applied to Plaintiffs/Petitioners Joe and Irene Valentine;

2.  Grant preliminary and permanent injunctive relief enjoining enforcement of the STR Ordinance by Defendants/Respondents as well as their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice in any manner of the order by personal service or otherwise;

3.  Grant Plaintiffs/Petitioners Joe and Irene Valentine damages, both compensatory and nominal, as allowed by law;

4.  For attorney fees as allowed by law.

5.  Tax the costs of this action against the Town, including attorney's fees, in accordance with the terms of N.C. Gen. Stat. § 6-21.7; and

6.  For such other and further relief as the Court may deem just and proper.

Respectfully submitted, this is the 3rd day of February, 2021.


BA FOLK, PLLC


/s/ Randy H. Herman

Randy H. Herman

N.C. Bar No. 46101

P.O. Box 90426

Raleigh, NC 27675

rherman@bafolk.com

(o) 919-825-1250

(f) 919.882.8297