IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:22-cv-102

| | | |
|---|---|---|
| JOE VALENTINE and IRENE VALENTINE, | ) ) ) | |
| Plaintiffs, | ) ) | **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| v. | ) ) | |
| TOWN OF CHAPEL HILL, | ) ) | |
| Defendant. | ) | |

Defendant, TOWN OF CHAPEL HILL (*hereinafter*, the "Town" or "Defendant"), by and through undersigned counsel and pursuant to Rule 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure and Local Civil Rule 7.2, and respectfully submits the following Brief in Support of Defendant's Motion to Dismiss.

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs' Amended Complaint, filed by Plaintiffs in this Court on March 7, 2023, seeks a declaration that the Town's short-term rental ordinance ("STR Ordinance") is illegal. Amended Complaint, Doc. 26 (*hereinafter*, "Amend. Compl."). Plaintiffs allege they are entitled to declaratory judgment on the bases that the enactment of the STR Ordinance: (1) was arbitrary and capricious [Amend. Compl. ¶¶58-75]; (2) violated Plaintiffs' rights to due process under the Fourteenth Amendment to the U.S. Constitution and the

near-synonymous Article 1, § 19 of the North Carolina State Constitution [*id.* ¶¶ 76-90]; (3) violated Plaintiffs' rights to equal protection under the Fourteenth Amendment to the U.S. Constitution and the near-synonymous Article 1, § 19 of the North Carolina State Constitution [*id.* ¶¶ 91-101]; (4) deprived Plaintiffs of vested rights [*id.* ¶¶ 113-119]; (5) was *ultra vires* [*id.* ¶¶ 120-129]; (6) was violative of Open Meetings Law [*id.* ¶¶ 130-137]; (7) was prohibited by the Dormant Commerce Clause [*id.* ¶¶138-148]; and (9) violates "freedom of movement" [*id.* ¶¶ 149-164].

## STATEMENT OF ALLEGED FACTS

Plaintiffs Joe and Irene Valentine are married and currently reside in Florida. Amended Complaint, March 7, 2022, ¶¶1, 9, Doc. 26 at 1, 2. In July 2004, Plaintiffs purchased a single-family residence located at 103 New Parkside Drive in Chapel Hill (the "house"). In its zoning ordinances, the Town has Plaintiffs' neighborhood within the Residential-2 (R-2) zoning district. *Id.* ¶ 10.

From July 2004 through August 2016, Plaintiffs lived in the house as their primary residence. *Id.* In August 2016, Plaintiffs relocated temporarily to Washington, D.C., but never moved back to Chapel Hill, instead moving to Florida. *Id.* ¶ 10, 11. Rather than selling the house, Plaintiffs tried to lease the property to pay expenses but allege they could not find long-term tenants. *Id.* ¶ 11.

2

Plaintiffs allege they next investigated whether whole-house rentals for fewer than 30 days were permitted by local laws and their homeowners' association. *Id.* ¶ 13. According to Plaintiffs, they decided the Town did not restrict these rentals or distinguish between short- and long-term leases. *Id.* Plaintiffs did not seek guidance or a written ruling from the Planning Director concerning their interpretation of the Town's zoning regulations. *See id.*

In October 2016, Plaintiffs began renting the house for short-term (STR) stays through listing services Airbnb and HomeAway (now Vacation Rentals by Owner (VRBO). *Id.* ¶ 15. Between October 2016 and December 2021, Plaintiffs undertook 96 rental transactions through Airbnb and VRBO at their Chapel Hill house. *Id.* ¶¶ 14-15. Plaintiffs allege that, for all bookings, their home was used by single families or other residential tenants who used the home consistently with applicable regulations for properties in the R-2 zone. *Id.* ¶ 17.

Plaintiffs allege they paid, and the Town accepted, occupancy and other taxes from Plaintiffs in connection with their rental business. *Id.* ¶ 23. Occupancy taxes are required by Section 19-11 of the Town's Code of Ordinances, which "levies a room occupancy tax of 3% tax on the gross receipts of any person … derived from the rental of any room, lodging, or similar accommodation…." *See* Town of Chapel Hill Code of Ordinances, Chp. 19, Art. II, Transient Occupancy Tax (Aug. 31, 2016), *available* at:

3

https://library.municode.com/nc/chapel_hill/codes/code_of_ordinances/265187?
nodeId=CO_CH19TA_ARTIITROCTA *and attached as* Exhibit A. Plaintiffs
allege that their occupancy tax payments gave the Town constructive notice
that Plaintiffs operated a dedicated STR in the house between 2016 and 2021.
Plaintiffs further allege they made upgrades to the home specific to its use as
a vacation rental: security cameras outside the home, Nest thermostats, new
smart televisions, and a remote access Wi-Fi lock with security codes for
keyless entry. *Amend. Comp.* ¶¶ 24-25.

On or around May 2021, Plaintiffs learned the Town was considering
enacting an ordinance banning investors from owning and operating STRs in
certain residential zones. *Id.* ¶ 26. In response, Plaintiffs sent a letter to the
Town asserting that the ordinance would unjustifiably violate their right to
earn rental income. *Id.* Plaintiffs also attended public meetings where they
spoke in opposition to the proposed ordinance. *Id.* ¶ 28.

While Plaintiffs allege the STR Ordinance arose from lobbying by the
hotel industry, in fact, in 2019, the Town appointed a taskforce to consider
regulating STRs within the Town. *Id.* ¶¶ 30-37. After the taskforce concluded,
the Town held public hearings to consider amendments to the LUMO to
prohibit dedicated STRs in some zoning districts, including R-2. *Id.* ¶ 41.

On May 4, 2021, the Town's Planning Commission Advisory Board voted
to recommend that the STR amendment was inconsistent with the Town's

4

Comprehensive Plan. *Id.* ¶ 41. On May 18, 2021, the STR Subcommittee of the Town's Planning Commission Advisory Board submitted its report opposing the proposed ordinance on the ground that it "was inconsistent with the Town's Comprehensive Plan" and cited several bases for that opinion. Amend. Compl. ¶ 40, Ex. C to Compl. The committee noted that STRs had been operating in Chapel Hill for twenty years and that individuals affected by the ordinance should be grandfathered in and allowed to operate. Amend. Compl. ¶ 41. According to Plaintiffs, the committee also urged the Town to collect data to support the concerns about STRs in all residential zones. *Id.* ¶¶ 41-42.

On June 23, 2021, the Town Council enacted the STR Ordinance. *Id.* ¶¶ 49-53. The STR Ordinance amended the LUMO with new definitions and use categories for STRs and prohibited operation of dedicated STRs in residential zones, including zone R-2. *Id.* ¶ 46. Violations of these provisions carry penalties, which will apply after a period of 18 months to allow STR operators, like Plaintiffs, to come into compliance. *Id.* ¶¶ 54-57.

Plaintiffs allege the LUMO did not prohibit STRs in the R-2 district prior to enactment of the STR Ordinance. *Id.* ¶ 57. Plaintiffs further alleges the Town is relying upon a LUMO provision, Section 3.7.1, that provides that "[u]ses of land or structures which are not expressly listed in section 3.7.2… are prohibited uses and shall not be established in that district or planned development," which is without legal effect. *Id.* ¶ 48. Uses permitted in R-2

5

according to Section 3.7 of the LUMO do not include operation of a business, which is defined as *See* Appendix A, "Land Use Management," Section 3.7.2, "Use Matrix," available at: [https://library.municode.com/nc/chapel_hill/codes/code_of_ordinances/371587?nodeId=CO_APXALAUSMA_ART3ZODIUSDIST_3.7USRE](https://library.municode.com/nc/chapel_hill/codes/code_of_ordinances/371587?nodeId=CO_APXALAUSMA_ART3ZODIUSDIST_3.7USRE), and attached as Exhibit B.

Plaintiffs obtained a written ruling from the Town on September 1, 2021, which informed Plaintiffs their use of the home as an STR was not a conforming use. After appealing the decision to the Board of Adjustment, Plaintiffs brought a separate appeal in nature of certiorari in Orange County Superior Court, which is currently pending. *Id.*; *see also* Petition for Writ of Certiorari, *Joe and Irene Valentine v. Town of Chapel Hill*, No. 21 CVS 00341 (Orange Cnty. Sup. Ct. Nov. 22, 2021), *attached as* Exhibit C.

## QUESTIONS PRESENTED

I.    Should Plaintiffs' Complaint be dismissed for lack of subject matter jurisdiction due to the prior pending state court action?

II.   Should Plaintiffs' Complaint be dismissed for failure to state a claim upon which relief may be granted?

## ARGUMENT

After filing an action challenging the Town's restriction of Plaintiffs' short-term rental business in its R-2 residential zoning district, Plaintiffs filed

6

this action seeking a declaration that the Town of Chapel Hill illegally enacted an ordinance regulating short-term rentals – illegally, because the ordinance would prohibit Plaintiffs' current use of their property. As a threshold matter, Plaintiffs' action should be dismissed, based upon the doctrine that "where a prior action is pending between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action." *See TitleMax of S.C., Inc. v. Fowler*, No. 1:20CV53, 2021 WL 1177441, at *2 (M.D.N.C. Mar. 29, 2021) (citing *Hyman v. City of Gastonia*, 466 F.3d 284, 288 (4th Cir. 2006); *Eways v. Governor's Island*, 326 N.C. 552, 558, 391 S.E.2d 182, 185 (1990)).

However, even if this Court determines that it has subject-matter jurisdiction over this action, Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief may be granted. Based upon the allegations of Plaintiffs' Amended Complaint, Plaintiffs have not stated a plausible claim that the enactment of the STR Ordinance should be declared illegal.

## I. Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction due to the prior pending state court action.

Courts "should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if the jurisdictional allegations in

7

the complaint are not true." *McLaughlin v. Safway Servs., LLC*, 429 F. App'x 347, 348 (4th Cir. 2011) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.2009)). A challenged petitioner "bears the burden of persuasion" in defending subject matter jurisdiction. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction because Plaintiffs previously filed an action concerning the same claims in North Carolina state court, which is pending. Under North Carolina law, where a prior action is pending between the same parties for the same subject matter in a court within the state having like jurisdiction, the prior action serves to abate the subsequent action. *Eways v. Governor's Island*, 326 N.C. 552, 558, 391 S.E.2d 182, 185 (1990). In a recent decision by this court, *TitleMax of S.C., Inc. v. Fowler*, cited supra, the defendant sought dismissal of the federal action based on a "a prior pending action in state court involving the same parties and claims." 2021 WL 1177441 at *2. Analyzing the defense as a challenge to the Court's subject-matter jurisdiction, this Court held that the doctrine did not apply in *TitleMax* because the previously filed state court action had been dismissed, which "effectively nullifies [its] existence." *Id.* Unlike the dismissed state court action in *TitleMax*, Plaintiffs allege their action in North Carolina Superior Court is still pending, making the application of abatement appropriate under the rule described in *Eways*.

8

This action would be suitable for abatement in favor of the prior pending state court action. The parties are identical: Joe and Irene Valentine, Plaintiffs, v. the Town of Chapel Hill, Defendant. The subject of the litigation in state court is also whether the Town may restrict Plaintiffs' use of their house in the R-2 district for short-term rentals and whether Plaintiffs had a nonconforming (*i.e.*, a previously established authorized use) of their house as a short-term rental prior to enactment of the STR Ordinance. When considering Plaintiffs' petition for review in nature of certiorari, the Superior Court must:

> …ensure that the rights of petitioners have not been prejudiced because the decision-making body's findings, inferences, conclusions, or decisions were:
> a. In violation of constitutional provisions, including those protecting procedural due process rights.
> b. **In excess of the statutory authority conferred upon the local government**, including preemption, or the authority conferred upon the decision-making board by ordinance.
> c. Inconsistent with applicable procedures specified by statute or ordinance.
> d. Affected by other error of law.
> e. Unsupported by competent, material, and substantial evidence in view of the entire record.
> f. Arbitrary or capricious.

N.C. Gen. Stat. § 160D-1402(j) (emphasis added).

Accordingly, the review of Plaintiffs' petition in nature of certiorari of the decision of the Town of Chapel Hill Board of Adjustment will involve the same issues as Plaintiffs have presented to the Court for declaratory judgment:

9

whether the Town acted arbitrarily or capriciously, whether the Town violated Plaintiffs' due process or other constitutional rights, whether the Town acted in excess of its authority (*i.e., ultra vires*), and whether the Town's decision was affected by some other legal error. The issues before the Orange County Superior Court and this Court are the same. *Compare* Amended Complaint, Doc. 26, *with* Petition for Certiorari, *attached as* Exhibit C.

Plaintiffs' jurisdictional allegations include that a North Carolina statute expressly provides for the claims they bring. *See* Amend. Compl. ¶ 5 (citing N.C. Gen. Stat. § 160D-1403.1) In 2019, North Carolina expressly codified the state-law causes of action under which Plaintiffs seek relief. *See* N.C. Gen. Stat. § 160D-1403.1 (2022), *formerly codified at* N.C. Gen. Stat. § 160A-393.1; *see also* Compl. ¶ 6. However, this statute provides:

> …**in lieu of any remedies available under G.S. 160D-405 or G.S. 160D-108(h)**, a person with standing, as defined in subsection (b) of this section, may bring an original civil action seeking declaratory relief, injunctive relief, damages, or any other remedies provided by law or equity, in superior court or federal court to challenge the enforceability, validity, or effect of a local land development regulation for any of the following claims:
> (1) The ordinance, either on its face or as applied, is unconstitutional.
> (2) The ordinance, either on its face or as applied, is ultra vires, preempted, or otherwise in excess of statutory authority.
> (3) The ordinance, either on its face or as applied, constitutes a taking of property.

N.C. Gen. Stat. § 160D-1403.1 The plain language of the statute provides that this remedy is available "in lieu of any remedies available under G.S. 160D-

405 [appeals of administrative decisions] or G.S. 160D-108(h) [a process to obtain a determination of a vested right]," not **in addition to** such remedies, as Plaintiffs seek through this action.

Plaintiffs sought review of denial of their request to deem their STR business a nonconforming use by filing a petition for certiorari in December 2021. See Exhibit C. As such, Plaintiffs' filing of this action two months later, in February 2022, was duplicative of the claims already submitted to the jurisdiction of the state court. Whether considered under the doctrine of abatement or for compliance with the statute authorizing Plaintiffs' cause of action, Plaintiffs' filing of this action in addition to the state court action was unauthorized. Plaintiffs' Complaint should be dismissed, or, in the alternative, otherwise abated, while the state-court action is pending.

## II. Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief may be granted.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). A "pleading that offers 'labels and conclusions' or a

11

'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

In short, to satisfy the "facial plausibility" standard and survive a Rule 12(b)(6) motion, a plaintiff must do more than simply plead facts that hint at the "sheer possibility that a defendant has acted unlawfully." *Id.* The Court does not credit allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Nor does it accept allegations that are inconsistent with terms of a properly considered written document. *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006). Where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6), so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

### A. The Town's enactment of the STR Ordinance was not arbitrary and capricious.

"A duly adopted rezoning ordinance is presumed to be valid and the burden is upon the plaintiff to establish its invalidity." *Nelson v. City of Burlington*, 80 N.C. App. 285, 288, 341 S.E.2d 739, 741 (1986). Zoning is a legislative act and is generally subject to judicial intervention only if it is exercised "arbitrarily or capriciously." *Walton N.C., LLC v. City of Concord*,

257 N.C. App. 227, 234-35, 809 S.E.2d 164, 170 (2017). This Court cannot "substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining whether its action is in the interest of the public health, safety, morals, or general welfare." *Zopfi v. City of Wilmington*, 273 N.C. 430, 436, 160 S.E.2d 325, 332 (1968). Thus, "[w]hen the most that can be said against such [rezoning] ordinances are that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere." *Id*. Instead, to be prohibited, there must be no "plausible basis" for the body's decision. *Id*.

The STR Ordinance, attached to the Complaint as Exhibit A, specifically states the Town Council's purposes and why the adopted restrictions would accomplish them:

> The low-density residential development and full-time residents of these neighborhoods contribute to their economic stability and neighborhood character. Restricting dedicated STRs in their neighborhoods will prevent the conversion of residential units into short-term rentals, maintain housing opportunities for full-time residents, reduce nuisances to full-time residents, and preserve neighborhood character....

Ex. A to Compl., Doc. 1-1 at 3.

The stated goals of allowing short-term rentals in some areas while prohibiting them in less dense areas to preserve the character of the neighborhoods and prevent nuisances to full-time residents supply a more than

Case 1:22-cv-00102-WO-JEP   Document 28   Filed 03/21/23   Page 13 of 30

"plausible basis" for the Town's enactment of the STR Ordinance. Neighborhood stability and safety relate to the general health and welfare of the Chapel Hill community, which is the Town Council's "primary duty and responsibility" to regulate and protect. Accordingly, based on Plaintiffs' allegations, the enactment of the STR Ordinance was not "arbitrary and capricious" and should not be subject to judicial intervention and Plaintiffs' claims on such basis should be dismissed.

B. <u>The Town's enactment of the STR Ordinance did not violate Plaintiffs' due process rights.</u>

Plaintiffs allege that enactment of the STR Ordinance violated Plaintiffs' due process rights under the Fourteenth Amendment to the U.S. Constitution and Article 1, § 19 of the North Carolina State Constitution. Amend. Compl. ¶¶ 76-90. "Law of the land" as used in Article I, Section 19, "is synonymous with 'due process of law' as used in the Fourteenth Amendment . . . ." *In re Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976). Plaintiffs argue that the STR Ordinance violates due process by exceeding the "limitations on legislative power forbidding arbitrary and unduly discriminatory interference with the rights." Amend. Compl. ¶¶ 82. Accordingly, Plaintiffs' claims are based on a substantive due process theory.

To establish a violation of substantive due process, a plaintiff must "demonstrate (1) that they had property or a property interest; (2) that the

14

state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir.1995). And in the context of a zoning action involving property, it must be clear that the state's action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow v. City of Cambridge*, 277 U.S. 183, 187-88 (1928).

As discussed in Part D below, Plaintiffs did not have a vested right in their use of the house as a short-term rental. As explained in Part A above, the Town's enactment of the STR Ordinance was in furtherance of public welfare and not "arbitrary and capricious" with "no foundation in reason." Finally, as alleged by Plaintiffs and discussed in Section I above, Plaintiffs pursued an approval from the Town and are undertaking an appeal process in state court authorized under state statutes to contest the denial of the approval. As such, the Town's action is within "the outer limits of legitimate governmental action", because Plaintiffs are at present undertaking a "process [that] could cure the deficiency." For these reasons, none of the elements for proving a violation of substantive due process are met. As such, Plaintiffs have not alleged a plausible claim that enactment of the STR Ordinance violated their

15

due process rights, and that claim for declaratory judgment should be dismissed.

C. The Town's enactment of the STR Ordinance did not violate Plaintiffs' equal protection rights.

Plaintiffs allege that the Town's enactment of the STR Ordinance violated their rights to equal protection under the Fourteenth Amendment to the U.S. Constitution and Article 1, § 19 of the North Carolina State Constitution. Amend. Compl. ¶¶ 91-112. Plaintiffs have not alleged that they were deprived of a fundamental right or subjected to discrimination based on a suspect classification; thus, the distinctions in the STR Ordinance should be upheld if they are "rationally related to a legitimate state interest." *See Pulte Home Corp. v. Montgomery Cnty., Maryland*, 909 F.3d 685, 693 (4th Cir. 2018). In meeting this standard, the Town "'need not actually articulate at any time the purpose or rationale supporting its classification,' and it is not required to produce evidence showing the rationality of its classification"; merely, any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Plaintiffs allege that the Town impermissibly differentiates between (1) owner-occupied and non-owner-occupied homes and (2) length of stay, *i.e.*, short versus long, for allowing housing rentals. However, differentiating between those categories is rational on its face.

16

The difference between owner-occupied and non-owner-occupied homes is the availability of the owner to observe, regulate, address, and receive complaints about any disruptive behavior by short-term renters. Owners who occupy the home that they are renting as their primary residence are close at hand to regulate the behavior of the short-term renters. Additionally, owners who reside in the home and allow their guests to engage in behaviors to the detriment of the health, safety, peace, and well-being of the immediate neighbors are available for neighbors to directly complain, and potentially impose negative social consequences, on owner-occupiers who allow their business to disturb the neighborhood. Owners who do not reside in the house being rented are not available moderate disruptive behavior. They are also not as available for complaints from neighbors or motivated to rein in any rowdy vacationers.

The distinction between short-term and long-term rentals also has an apparent rational basis. Short-term renters or vacationers suffer no long-term negative consequences from disrupting the peace of a residential area during their short stay. However, staying in a house for a long enough term that the renter "resides" there means that they are invested in preserving the peace, safety, and welfare of the area and in not having a reputation for disrupting it.

The test for "any reasonably conceivable state of facts that could provide a rational basis for the classification" is objective and does not require the

Town to have had those facts in mind when enacting the STR Ordinance. *Pulte Home Corp.*, 909 F.3d at 693. Any "reasonably conceivable" set of facts is sufficient. As discussed above, the differentiations between owner-occupied and non-owner-occupied houses and short- versus long-term renters in the STR Ordinance have rational reasons. Plaintiffs have not "carried its "heavy burden of negating every conceivable basis which might reasonably support the challenged classification." *Id.* at 695. As such, Plaintiffs have not stated a claim for deprivation of their equal protection rights by enactment of the STR Ordinance, and such claims should be dismissed.

D. <u>The Town's enactment of the STR Ordinance did not deprive Plaintiffs of vested rights.</u>

Plaintiffs allege that the enactment of the STR Ordinance was illegal in that it deprived them of vested rights in using their house as a designated short-term rental. *See* Amend. Compl. ¶¶ 113-119. "A party claiming a common law vested right in a nonconforming use of land must show: (1) substantial expenditures; (2) in good faith reliance; (3) on valid governmental approval; (4) resulting in the party's detriment." *Walton N. Carolina, LLC v. City of Concord*, 257 N.C. App. 227, 232, 809 S.E.2d 164, 168 (2017) (quoting *Kirkpatrick v. Village Council for the Village of Pinehurst*, 138 N.C. App. 79, 87, 530 S.E.2d 338, 343 (2000)). Property uses that are non-conforming are not favored by the law. *CG & T Corp. v. Bd. of Adjustment of Wilmington,* 105 N.C.

18

App. 32, 39, 411 S.E.2d 655, 659 (1992). When a property owner makes good-faith expenditures in the absence of zoning or under the authority of a building permit, subsequent changes in the zoning of the property may not prohibit the resulting nonconforming use." *Finch v. City of Durham*, 325 N.C. 352, 366, 384 S.E.2d 8, 16 (1989).

### 1. Plaintiffs have not plausibly alleged "substantial expenditures" for the use of their house as a designated STR.

The expenditures Plaintiffs allege are all expenditures that are incident to normal home ownership and residential property maintenance and that are not specific to a short-term rental use type. Their alleged updates to the house include routine maintenance such as a new roof and vinyl kitchen tiles. Plaintiffs cannot argue that the use of the house as an STR is no more intense than residence by a single family, but then, claim that the STR use require more maintenance. Moreover, thermostats, security systems with outdoor cameras, and key-free entry systems are expenditures that normal homeowners routinely incur and are not specific to a rental house. A television is transportable personal property. Hence even if they were able to establish the other elements of vested rights, they have failed to allege "substantial expenditures" incident to a change in use that entitle them to relief.

### 2. Plaintiffs have not plausibly alleged "good faith reliance" on an absence of regulation.

19

As their basis for a vested right, Plaintiffs allege that they checked for zoning regulations that would prohibit their use of their property for an Airbnb and VRBO business and found none; thus, they relied "in good faith" on the lack of zoning regulation. However, there are many zoning regulations that applied to the R-2 district, none of which would have reasonably allowed Plaintiffs to conclude that they could operate a business there. The R-2 district does not allow business activities of any kind. *See* Ex. B, at 2. As Plaintiffs alleged, they paid occupancy taxes, just as hotels and other lodgings for transient persons did. Amend. Compl. ¶22. The ordinance that requires occupancy taxes specifically taxes the "gross receipts…derived from the rental of any room, lodging, or similar accommodation." Ordinances § 19-11, Ex. A at 1. Provisions within the occupancy tax ordinances refer to the activities as a "business" and those who pay such taxes as "operators of a business." *See* Ordinances § 19-12, Ex. A at 1. Additionally, the occupancy taxes differentiate between short term or "transient" renters and long-term, residential renters by providing for refunds of occupancy taxes paid by a person who stays longer than 90 days. Ordinances § 19-17, Ex. A at 2. Plaintiffs were aware that they were operating a business within the R-2 zoning district: they calculated gross receipts and paid occupancy taxes. When Plaintiffs looked at the use chart for the R-2 zoning district and saw that business use was prohibited, Plaintiffs could not proceed "in the honest belief" or "in good faith" without seeking a

20

written determination or guidance in any capacity concerning their interpretation of the Town's ordinances.

### 3. Plaintiffs have not plausibly alleged that they reasonably relied upon a valid governmental approval.

To establish a vested right in a land use without a permit, a plaintiff must "obtain a final interpretation of the [development ordinances] from planning staff stating that they were allowed" to engage in the use." *See Huntington Props., LLC v. Currituck Cnty.*, 153 N.C. App. 218, 226-27, 569 S.E.2d 695, 701-02 (2002). Because Plaintiffs obtained no such approval to operate a designated short-term rental in their house in a R-2 district, Plaintiffs did not establish a vested right. Given that Plaintiffs were paying business taxes while operating a business in the R-2 district (where no businesses were allowed), Plaintiffs could have sought a zoning compliance permit or any kind of a determination from the Town that their business use was allowed. Without such approval, Plaintiffs could not have reasonably relied on any approval or representation from the Town that their use was lawful. Plaintiffs argue, without reference to authority, that the Town had constructive notice of Plaintiffs' use by their payment of occupancy taxes. However, Plaintiffs cannot reasonably rely on the assumptions they drew from their own review of the Town's ordinances when they are required to obtain a final interpretation of zoning ordinances from Town planning staff.

21

Plaintiffs' use was not allowed by the Town's existing zoning ordinances, undertaken in good faith, or in reasonable reliance on an approval from the Town. As such, Plaintiffs did not have a vested right to continue such use after adoption of the STR Ordinance. Based upon the allegations of the Complaint and the documents attached or referred to in the Complaint, Plaintiffs fail to plausibly allege a claim that they had a vested right in operating their house as a short-term rental prior to enactment of the STR Ordinance. As such, Plaintiffs' claim for declaratory judgment on that basis should be dismissed.

E. The Town's enactment of the STR Ordinance was not *ultra vires*.

Plaintiffs argue that the Town acted ultra vires in enacting a prohibition on short term rentals in certain zoning districts. Amend. Compl. ¶¶ 120-129. However, as conceded by Plaintiffs, N.C. Gen. Stat. § 160D-702 authorizes local governments to regulate and restrict, in relevant part, "the location and use of buildings, structures, and land." Further, the Court of Appeals recently upheld the City of Wilmington's authority to do exactly what the Town of Chapel Hill is doing here – to restrict short term rentals in certain zoning districts.

In *Schroeder v. City of Wilmington*, the plaintiffs challenged the ability of the City of Wilmington to adopt an ordinance which, in part, restricted short-term rentals to specific zoning districts. 2022-NCCOA-210, ¶¶ 41-42 (2022). The Court held that "the restriction of whole-house lodging to certain zoning districts" was not preempted by Section 160D-1207(c), and that the City was

22

authorized to enact this restriction. *Id.* at ¶ 41. As such, the Court upheld the portion of the ordinance which restricted short term rentals to certain zoning districts, exactly what Plaintiffs are challenging in this case. This decision forecloses Plaintiffs' arguments that the Town had no authority to enact such a restriction.

F. <u>The Town's enactment of the STR Ordinance is not void for violating the Open Meetings Law.</u>

Plaintiffs allege, briefly, that the Town's enactment of the STR Ordinance is void because it violated the Open Meetings Law. Amend. Compl. ¶¶ 130-137. N.C. Gen. Stat. § 143-318.10, the Open Meetings Law, requires that each "official meeting" of a "public body" be open to the public. An "official meeting" requires gathering together or simultaneous communication of a majority of the members of a public body, if they are participating in deliberations or otherwise conducting public business. § 143-318.10(b). Plaintiffs have not alleged that a majority of the members of the Town Council conducted any "official meeting." Rather, Plaintiffs speculate the "decision not to grandfather existing uses was made outside the public eye." Amend. Compl. ¶ 136.

Plaintiffs base this claim on speculation that the failure of Council Member Stegman to introduce debate on grandfathering preexisting STRs, an issue that Plaintiffs allege she supported, during the meetings where the STR

Ordinance was debated by Town Council members, meant that the issue had somehow been "decided" before the meeting. *See* Amend. Compl. ¶ 133. If, as Plaintiffs allege, a Town Council member supported a change to the STR Ordinance, the Town Council member could have raised the issue for debate during a meeting or moved to amend the ordinance to make such a change.

One Town Council member's decision to debate or take any legislative action during a public meeting is not addressed under the Open Meetings Law, nor is it within the purview of any judicial review. *See Bogan v. Scott-Harris*, 523 U.S. 44, 50 (1998) (holding that local legislators are entitled to absolute immunity, which also precludes "responsibility for . . . the motives which influence him, and the manner in which such duties are performed."). Absent allegations that a majority of council members met and discussed the STR Ordinance outside of a public meeting, which are not present in the Complaint, the Open Meetings Law is not implicated.

Additionally, Plaintiffs' claim fails under other express provisions of the Open Meetings Law. Only the North Carolina Superior Courts have jurisdiction to enter injunctive relief or award remedies for violations of the Open Meetings Law. *See* N.C. Gen. Stat. §§ 143-318.16(a), 143-318.16A(b). Additionally, any such suit for declaratory relief must be brought "within 45 days following the initial disclosure of the action that the suit seeks to have declared null and void." *Id*. This is not the court with statutory designation,

and Plaintiffs' action brought in February 2022 is far too late to seek declaratory relief for an alleged May or June 2021 violation of the Open Meetings Law. For these reasons, Plaintiffs' Complaint fails to state a claim that the enactment of the STR Ordinance violated Open Meetings Law, and such claims should be dismissed.

G. <u>The Town's enactment of the STR Ordinance was not prohibited by the Dormant Commerce Clause.</u>

Plaintiffs allege that the enactment of the STR Ordinance impermissibly burdens interstate commerce in violation of the Commerce Clause. *See* Amend. Compl. ¶¶ 138-148. "A statute [or ordinance] that is not protectionist in intent or practical effect, and only burdens interstate commerce incidentally, 'will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *CMH Mfg., Inc. v. Catawba Cnty.*, 994 F. Supp. 697, 709 (W.D.N.C. 1998) (quoting *Pike v. Bruce Ch., Inc.*, 397 U.S. 137, 142 (1970)).

Plaintiffs allege that the STR Ordinance indirectly burdens out-of-state owners and potential out-of-state visitors. *See* Amend. Compl. ¶¶ 143-44. First, the alleged "burden" exists for anyone who wishes to operate a dedicated STR in a house that is not their primary residence, regardless of where they live. An owner could reside in-state at a distance, such as in Asheville, or even in Chapel Hill itself, and be prevented from short-term renting his or her Chapel

25

Hill house. Additionally, many accommodations remain available. Dedicated STRs are allowed in some districts and non-dedicated STRs are allowed in all residential districts, which leaves many options for out-of-state visitors. The burden on interstate commerce alleged by Plaintiffs is negligible at best.

In *CMH Manufacturing*, plaintiff mobile home manufacturers challenged a local ordinance requiring mobile homes to have siding and roofing consistent with building codes for single-family houses, which exceeded the requirements of federal regulations governing mobile home manufacture. The plaintiffs argued that this burdened the sale of mobile homes to Catawba County residents that could be sold in other areas of the country in violation of the dormant commerce clause. However, the Western District determined that local benefits like "reduc[ing] community strife," "preventing further diminution of land" available for a particular type of residence and preserving the property value and aesthetic standards of neighborhoods were sufficient interests to outweigh any burden on some interstate transactions in mobile homes.

Like the justifications presented for the ordinance in CMH Manufacturing, the STR Ordinance's stated goals were to preserve stability and prevent strife in quiet residential neighborhoods, to keep houses in low-income density neighborhoods available for residents and not overrun by short-term rental businesses, and to preserve neighborhood "character." *See* Ex. A to

26

Compl., Doc 1-1, at 3. Plaintiffs have not adequately claimed that the STR Ordinance's negligible burden on interstate commerce is "clearly excessive" and their dormant commerce clause claim should be dismissed.

H. <u>The Town's enactment of the STR Ordinance does not violate freedom of movement.</u>

The STR Ordinance in no plausible way violates Plaintiffs', or anyone else's, freedom of movement. "The right to travel is not violated by minor burdens." *Elhady v. Kable*, 993 F.3d 208, 221 (4th Cir. 2021). The right to travel is not implicated unless the challenged action objectively, not subjectively, deters such travel. *Id.* The Ordinance does not prevent Plaintiffs from living in their home in Chapel Hill or in their home in Florida or traveling between the two, nor does it in any other way objectively impede travel.

## CONCLUSION

For the foregoing reasons, Defendant Town of Chapel Hill respectfully requests that its Motion to Dismiss be GRANTED and Plaintiffs' claims be DISMISSED WITH PREJUDICE.

This the 21st day of March, 2023.

**HARTZOG LAW GROUP LLP**

*/s/ DAN M. HARTZOG, JR.*
DAN M. HARTZOG, JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
2626 Glenwood Avenue, Suite 305
Raleigh, NC 27608
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorney for Defendant Town of Chapel Hill*

## CERTIFICATE OF COMPLIANCE

This Brief complies with the word count limit set forth in Local Civil Rule

7.3(d)(1). The number of words in the body, headings, and footnotes of this

Brief, exclusive of the caption, table of contents, signatures, and required

certificates, does not exceed 6,250 words, according to the word count function
of the software used to prepare this Brief.

/s/ Dan M. Hartzog, Jr.

Case 1:22-cv-00102-WO-JEP   Document 28   Filed 03/21/23   Page 29 of 30

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that this day the foregoing was filed with the Court's CM/ECF system, which will effect service upon Plaintiffs through counsel of record:

> Randy H. Herman
> BA FOLK, PLLC
> P.O. Box 90426
> Raleigh, NC 27675
> rherman@bafolk.com
> *Attorney for Plaintiff*

This the 21st day of March, 2023.

> **HARTZOG LAW GROUP LLP**
>
> */s/ DAN M. HARTZOG, JR.*
> DAN M. HARTZOG, JR.
> N.C. State Bar No. 35330
> E-mail: dhartzogjr@hartzoglawgroup.com
> 2626 Glenwood Avenue, Suite 305
> Raleigh, NC 27608
> Telephone: (919) 670-0338
> Facsimile: (919) 714-4635
> *Attorney for Defendant Town of Chapel Hill*

30