UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**CIVIL ACTION NO. 1:22-cv-102**

JOE and IRENE VALENTINE

      Plaintiff,

v.

TOWN OF CHAPEL HILL

      Defendant.

**BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS**

      COMES NOW Plaintiffs, Joe and Irene Valentine, by and through the undersigned counsel, respectfully submits the following Brief in Opposition to Defendant's Motion to Dismiss.

## FACTUAL BACKGROUND

      Plaintiffs' factual statement is set forth in detail in their Complaint filed previously in this matter, to which reference is hereby made. A summary of the facts is set forth below.

      The Valentines own a single-family home in Chapel Hill (the "Subject Property"). The Subject Property was the Valentine family's primary residence from July 2004 until at least August 2016.  They currently reside in Florida, but maintain their ownership interest in the Subject Property.

      Starting in October 2016, the Valentines have continuously operated the Subject Property as s short-term rental through both AirBnB and VRBO in a very professional manner and have received no complaints from either neighbors or Town officials about any of the families to whom they have rented.

On June 23, 2021, the Town of Chapel Hill made text amendments to its Land Use Management Ordinance (LUMO) Sections 3.7, 4.9, 6.27, and Appendix A to ban homeowners from offering dedicated short-term rentals (hereinafter "dedicated STRs") at property they own in certain residential zones. These amendments are collectively referred to herein as the "STR Ordinance". The new ordinance went into effect immediately and gave non-compliant homeowners 18 months' time to come into compliance or face penalties for violations.

Since the Subject Property is treated by the Town as a non-primary residence located in the R-2 zone, where the petitioners had been openly and legally operating a dedicated STR for over five years prior to the enactment of the STR Ordinance, they sought a zoning opinion from the Town regarding the continued operation of the Subject Property as a dedicated STR under a non-conforming use approval.

By their letter of September 1, 2021, the Town *inter alia* informed the Valentines that "the use of the house at 103 New Park Side Drive as dedicated STRs is not a legal nonconforming use as the short-term rental use was not expressly listed in the LUMO and was thus prohibited by the LUMO prior to the short-term rental ordinance of June 23, 2021." This decision is the subject of a separate appeal in Orange County Superior Court case number 21 CVS 1341.

Plaintiffs now seek a declaratory judgment regarding the legality of the STR Ordinance under various state and federal limitations.

## QUESTIONS PRESENTED

1. Does the pending appeal of the denial of Plaintiff's board of adjustment matter preclude this court from having jurisdiction over this related matter?

2. Does Plaintiffs' complaint state a claim upon which relief may be granted?

# ARGUMENT

Plaintiffs' complaint is not precluded by the existence of another suit relating to the same facts but concerning different and more limited arguments and seeking different relief. Further, Plaintiffs' complaint on its face states one or more claims upon which relief may be granted sufficient to survive a motion to dismiss.

## I. The Pending State Court Appeals Does Not Preclude this Action

Defendant, in its Motion to Dismiss (Doc. 27, hereinafter "MTD") and associated brief (Doc. 28, hereinafter "Def. Br."), urges this Court to dismiss this action because Plaintiffs have also separately filed an appeal of the decision of the Chapel Hill Board of Adjustment concerning Plaintiff's claim for non-conforming use status. According to Defendant, this requires this court to abate the current action because it "concern[s] the same claims". Def. Br. 9.

N.C.G.S. § 160D-1403.1 permits any person with standing to challenge a local ordinance to do so via a civil action filed in either state or federal court within one year following enactment of the ordinance. The Valentines have challenged the Town's ordinance via this civil action timely filed in federal court.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

Plaintiffs have exercised their right to file this suit in federal court under both federal question and diversity jurisdiction within the prescribed time and this court has jurisdiction to hear this matter.

Defendant's argument to the contrary is squarely precluded by the statute authorizing this suit. N.C. Gen. Stat. § 160D-1403.1 permits an original civil action to be filed in state or federal

court "to challenge the enforceability, validity, or effect of a local land development regulation". This original civil action may be filed "in lieu of" a direct appeal from the decision of a local board.

Defendant claims that the "in lieu of" language in the statute was intended by the General Assembly to require that aggrieved parties elect either an original civil suit or an appeal in the nature of certiorari. Def. Br. 11. However, this language must be read in context of the entire statutory scheme. *See Food & Drug Administration v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). Later in the same section, N.C. Gen. Stat. § 160D-1403.1(d) states that "[a]n original civil action authorized by this section *may*, for convenience and economy, be joined with a petition for writ of certiorari and decided in the same proceedings." (emphasis added). If, as Defendant suggests, the bringing of a petition for writ of certiorari precludes filing an original civil suit, or vice versa, there would be no need for a procedural statute concerning joining the two actions, nor would the statute leave it to the discretion of the parties whether to join the two actions or pursue them separately.

This reading of the statute is also supported by the context in which Section 1403.1 was enacted. The language now contained in N.C. Gen. Stat. § 160D-1403.1 was originally enacted in 2019 as part of S.L. 2019-111, a copy of which is attached hereto as Exhibit A. Prior to enactment of this statute, all challenges to the validity of a local land development ordinance were required to be brought before the local Board of Adjustment in the first instance. Only if the Board of Adjustment denied the claim could the matter be brought to Superior Court on appeal in the nature of certiorari.

The new provision (now codified as Section 1403.1) provided an alternative and perhaps expedited route to challenge an ordinance. S.L. 2019-111, the reform bill in which the section was

first enacted, contained many other changes to the zoning statutes, all targeted at increasing property rights and reducing the power of local governments. *See, e.g.*, S.L. 2019-111(1.1) (allowing property owners to elect which version of an ordinance to follow if an amendment is made while a permit decision is pending); S.L. 2019-111(1.3.(e)) (requiring written consent from property owner before new ordinance is effective); S.L. 2019-111(1.4) (requiring written consent from property owner to down-zone property). In this context, it is unreasonable to suggest that Section 1403.1 was intended to have the effect of limiting the choices of property owners.

Plaintiffs' pending certiorari matter focuses solely on the question that was reviewed and decided by the Board of Adjustment: are Plaintiffs entitled to continue their rental of their property for short-term tenants as a non-conforming (i.e. grandfathered) use? *See* Def. Br. Ex. C. This question was originally submitted to the town's zoning staff on August 4, 2021. The town issued a zoning opinion letter on September 1, 2021 stating that the use was illegal prior to June 23, 2021 and therefore cannot be considered non-conforming. It is this letter that was appealed to the Board of Adjustment and remains on appeal with the Orange County Superior Court. Although the facts and parties are the same, the legal issues before the Superior Court are entirely different than those before this Court.

In general it is inappropriate to challenge a legislative decision as part of judicial review of a quasi-judicial or administrative decision applying the ordinance. *Simpson v. City of Charlotte*, 115 N.C. App. 51, 443 S.E.2d 772 (1994). The procedure in a certiorari appeal is also significantly different and more limited. For instance, the Superior Court sitting as a court of appeal generally does not take new evidence. *See* N.C. Gen. Stat. § 160D-405; *Thompson v. Union Cty*, 2022-NCCOA-382 at *10 (2022) ("The Superior Court is not the trier of fact; that is the function of the town board."). The constitutionality of an ordinance provision generally cannot be challenged in a

certiorari review of a board of adjustment decision. *Batch v. Town of Chapel Hill*, 326 N.C. 1,11, 387 S.E.2d 655, 661–62, *cert. denied*, 496 U.S. 931 (1990). The underlying validity of the ordinance is also not at issue in a certiorari petition. *Simpson v. City of Charlotte*, 115 N.C. App. 51, 443 S.E.2d 772 (1994). Therefore, to hold that the certiorari appeal precludes this suit would leave Plaintiffs without an avenue in which to present its arguments as to the underlying soundness of the STR Ordinance.

## II. Plaintiffs' Complaint States a Claim Upon Which Relief May Be Granted

On review of a motion to dismiss pursuant to Rule 12(b)(6), the court "must accept the factual allegations in the complaint as true." *ACA Financial Guaranty Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir, 2019). Based on these factual pleadings, the court must then determine whether the plaintiff has "state[d] a claim to relief that is plausible on its face." *Id.*, *quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Mere legal conclusions are insufficient. *Id.*

Read under the proper standard, Plaintiffs' complaint pleads specific, detailed factual matters concerning Defendant's STR ordinance, the process by which it was enacted, and the negative impacts it has had on Plaintiffs' property. This is sufficient to meet the preliminary burden of 12(b)(6).

### A. Arbitrary and Capricious

Defendant, in its brief, cites several cases regarding the validity of rezonings. Def. Br. 13. As a threshold matter, these quotations are inapposite to the subject of this litigation, which is not a rezoning. Rezoning is defined by statute as: "An amendment to a zoning regulation for the purpose of changing the zoning district that is applied to a specified property or properties." N.C.

Gen. Stat. § 160D-102(34). In a rezoning, a particular parcel is changed from one pre-existing zoning district to another pre-existing zoning district. Therefore, the appropriateness of the rezoning decision focuses primarily on whether or not the process was fair. Here, Plaintiffs' property was zoned in the R-2 zoning district prior to the town's enactment of its short-term rental ordinance and it continues to be zoned in the R-2 zoning district.

By contrast, the short-term rental ordinance in question in this matter changed the restrictions applicable to <u>all</u> properties in the R-2 district, and indeed in all districts throughout the town's zoning jurisdiction. It imposed brand-new restrictions not previously tested for constitutional fitness and is therefore subject to a greater level of scrutiny than a rezoning. Defendant in particular has a history of exceeding its authority with ordinances that are later struck down. *See, e.g.*, *King v. Town of Chapel Hill*, 367 N.C. 400, 758 S.E.2d 364, (2014); *Graham Court Assoc. v. Town Council of Town of Chapel Hill*, 53 N.C. App. 543, 551 (1981).

Defendant, in common with all other North Carolina municipalities, may only exercise such legislative authority as it is delegated by the General Assembly. When a municipality enacts an ordinance that exceeds its delegated authority, the courts can and must invalidate that action. *King, supra*, at 411. In reviewing a town's enactment of an ordinance, the courts are not bound to defer to the town's determination that its own action is constitutional. *Id.*

Defendant argues that because the enacted ordinance recites certain justifications in support (economic stability, preserving neighborhood character) that recital ends all inquiry by this court. However, the process by which the ordinance was enacted raises questions as to whether the Town's justifications were pretextual. Prior to consideration by the town council, the matter of STR restriction was evaluated by three advisory bodies. First, the town's appointed taskforce prepared a report in 2019, which was inconclusive about what steps, if any, should be taken to

regulate STRs. Second, the town's Planning Commission created an STR subcommittee to consider this issue. Its report, issued in May 2021, found no evidence of negative effects from STRs and advised against additional regulation. Third, the full Planning Commission in May 2021 voted to recommend that the town council not adopt the proposed STR ordinance as it was not consistent with the town's comprehensive plan. Despite this input, the town council adopted the ordinance in June 2021.

Although the town is certainly not bound to follow the recommendations of its advisory bodies, the unanimously negative feedback received by the town council raises significant questions as to whether the town's decision was arbitrary or capricious. Resolution by motion to dismiss is at best premature. As stated in another context by the Tenth Circuit, "If proof of a civil right violation depends on an open statement by an official of an intent to discriminate, the Fourteenth Amendment offers little solace to those seeking its protection." *Dailey v. City of Lawton*, 425 F.2d 1037, 1039 (1970). Plaintiffs are entitled to at least inquire beyond the blanket statements of the town.

B.  Due Process

In this context, Plaintiffs and Defendant agree that Plaintiffs' substantive due process argument depends on the conclusions reached in other portions of this litigation. *See* Def. Br. 16. Therefore, Plaintiffs rely on arguments made elsewhere in this brief with regard to their due process claim.

C.  Equal Protection

Plaintiffs argue that the STR Ordinance denies them equal protection protected by the Fourteenth Amendment to the U.S. Constitution and Article I, Section 19 of the North Carolina

State Constitution. In response, Defendant argues that the distinctions made in the STR Ordinance, i.e. between owner-occupied and non-owner-occupied properties and between short-term and long-term rentals, must be upheld if they are rationally related to a legitimate state interest. Def. Br. 17. Defendant then goes on to give arguments as to how such distinctions could be considered rational. However, Defendant fails to consider the second part of the test: that they be related to a legitimate state interest. As discussed in Part E below, municipalities are without authority to distinguish between owner-occupied and non-owner-occupied properties in enacting zoning ordinances. This principle was most recently affirmed in *City of Wilmington v. Hill*, 189 N.C. App. 173 (2008). In the absence of a legitimate interest, it is immaterial how "rational" the distinction may or may not be.

The rationale advanced by the Town for discrimination in their brief is that in owner-occupied homes, the owner is available to observe, regulate, address, and receive complaints about any disruptive behavior by short-term renters. Def. Br. 17. Owners who do not reside in the house being rented are not available to observe, prevent, or immediately address disruptive behavior. They are also not as available for complaints from neighbors or susceptible to social pressure from the neighborhood to rein in any rowdy vacationers.

The Town further speculates in their brief that Short-term renters or vacationers suffer no long-term negative consequences from disrupting the peace of a residential area during their short stay. However, staying in a house for a long enough term that the renter "resides" there means that they are invested in preserving the peace, safety, and welfare of the area and in not having a reputation for disrupting it.

While engaging in a bout of speculative creative writing, the Town has not provided any facts to support even a rational basis for making these statements. The Plaintiff has produced proof

of over 70 appreciative reviews from previous tenants over six years and has no history of any complaints from any neighbor. The records available with the Town show that nuisance complaints received by the Town are almost entirely related to long term student housing. The Town has not received any significant number of complaints of such nuisance related to short term rentals. Further, the Town has not commissioned any study to gather objective data and evaluate the impact of short-term rental housing on neighborhoods and the local economy. At its meeting held on May 4, 2021, the Town's Planning Commission voted the proposed Land Use Management Ordinance Text Amendment, regarding Short Term Rentals (STRs), as inconsistent with the Town's Comprehensive Plan. They noted that there was no evidence that STRs (i) negatively impact housing affordability or neighboring property values; (ii) are more damaging to a neighborhood's character or tranquility; (iii) affect parking availability more than student rentals; (iv) increase gun violence; or (v) have been more damaging to hotelier's profits than the addition of new hotels in recent decades in Chapel Hill Town. They also noted that to date, the Town did not have the data necessary to require separation of types of STRs from one another, or to regulate certain STRs to areas with particular zoning classifications. As an Advisory Board, they recommended that STRs should be allowed in all areas zoned residential, existing operators should be granted a 'Grandfather clause' and be allowed to continue to operate.

In view of the clear and unanimous recommendation of the Town's Planning Commission, the lack of evidence with the Town to support the claim that short-term rental tenants cause any type of nuisance, and the availability of records with the Town which show that long term student housing in the Town is the source of most, if not all, complaints from neighbors, the Town has failed to establish that its ordinance bears "some rational relationship to a conceivable legitimate governmental interest." For this reason, the violation of Equal Protection clause due to

discrimination between landlords on the basis of duration of rentals or their residency, fails to pass the rational basis test and must be struck down as unconstitutional.

D. Vested Rights

"A lawfully established nonconforming use is a vested right and is entitled to constitutional protection." *Godfrey v. Zoning Bd. of Adjustment of Union Cty*, 344 S.E.2d 272, 279 (N.C. 1986) (*quoting* 4 E. Yokley, Zoning Law and Practice § 22–3 (4th ed. 1979)). "A party's common law right to develop and/or construct vests when: (1) the party has made, prior to the amendment of a zoning ordinance, expenditures or incurred contractual obligations substantial in amount, incidental to or as part of the acquisition of the building site or the construction or equipment of the proposed building; (2) the obligations and/or expenditures are incurred in good faith, (3) the obligations and/or expenditures were made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required, authorizing the use requested by the party; and (4) the amended ordinance is a detriment to the party." *Browning-Ferris Ind. of South Atlantic, Inc. v. Guilford Cty Bd. of Adjustment*, 126 N.C. App. 168, 171-172 (1997) (internal quotation marks and citations omitted). "[A] a determination of the "vested rights" issue requires resolution of questions of fact, including reasonableness of reliance, existence of good or bad faith, and substantiality of expenditures." *Godfrey v. Zoning Bd. of Adjustment of Union Cty*, 344 S.E.2d 272, 279 (N.C. 1986).

1. Substantial Expenditures

Defendants argue: "The expenditures Plaintiffs allege are all expenditures that are incident to normal home ownership and residential property maintenance and that are not specific to a short-term rental use type." Def. Br. 20. However, the reason for which Plaintiffs expended funds

and whether they would have done so if they did not intend to rent their property is a question of fact. Plaintiffs have pled that they "invested in upgrading their home in Chapel Hill to provide various amenities to make it more suitable for STRs." Compl. ¶ 23. These upgrades include "approximately $35,000 in amenities including a new roof, new luxury vinyl plank flooring, deck repair and painting, backyard fence repair and painting, backyard garden, HVAC, dishwasher and other appliances" (Compl. ¶ 23) and "security cameras outside the home, Nest digital thermostats, new smart televisions, and a remote access wifi lock with security codes for keyless entry for the front door." (Compl. ¶ 24). At the motion to dismiss stage, the Court must accept these pleading as true. *ACA Financial Guaranty Corp, supra.*

### 2.    Good Faith Reliance

Defendants argue that Plaintiffs could not plausibly have a vested right to continue engaging in short-term rental of their property because "there are many zoning regulations that applied to the R-2 district [prior to enactment of the STR ordinance], none of which would have reasonably allowed Plaintiffs to conclude that they could operate a business there." Def. Br. 21. However, the "burden of proof to show the existence of a violation of the ordinance is upon the [municipality]." *Thompson v. Union Cty,* 2022-NCCOA-382 at *16 (2022).

North Carolina courts have long held that residential rentals, regardless of term, are not a business use of property. "A negative covenant, prohibiting business and commercial uses of the property, does not bar short-term residential vacation rentals." *Russell v. Donaldson*, 222 N.C. App. 702, 707, 731 S.E.2d 535, 539 (2012) (collecting prior cases).

Certainly the town does not, and could not, argue that Plaintiffs' renting their house to a tenant for a one-year period would constitute "operating a business" regardless of whether or not

such a rental generated profit for Plaintiffs. As discussed in Section E below, such an argument is precluded by *Graham Court Assoc. v. Town Council of the Town of Chapel Hill*, 281 S.E.2d 418 (1981) and *City of Wilmington v. Hill*, 189 N.C. App. 173 (2008). The town's zoning authority is limited to regulating the "use of buildings, structures and land." N.C. Gen. Stat. § 160D-702(a). The "use" of a home rented for residential purposes is a residential use.

To the extent that the town's ordinances prior to June 2021 were ambiguous as to whether or not the residential rental of property constituted a "business use", such ambiguity must be interpreted in favor of free use of property. *Byrd v. Franklin Cnty.*, 778 S.E.2d 268 (N.C. 2015). "Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms." *Yancey v. Heafner*, 268 N.C. 263, 266 (1966).

3. Governmental Approval

Defendants argue that Plaintiffs never obtained express approval from Defendant to rent their property, therefore: "Because Plaintiffs obtained no such approval to operate a designated short-term rental in their house in a R-2 district, Plaintiffs did not establish a vested right." Def. Br. 22. This argument misunderstands the third element of the common-law vested right doctrine. In order to establish a vested right, the expenditures must be "made in reasonable reliance on and after the issuance of a valid building permit, if such permit is required." *Browning-Ferris, supra.* (emphasis added). In the case where no approval is required, it is not fatal to a vested-rights claim that approval was never sought or obtained. *In re Campsites Unlimited, Inc.*, 287 N.C. 493, 501 (1975). Although it is always possible for a property owner to request an ordinance interpretation by the municipal authorities, no case holds that the owner is required to do so before making use of their property. Again, Defendant seems to operate under the premise repeatedly repudiated by

North Carolina's courts: that "everything is proscribed except that which is allowed." *Land v. Village of Wesley Chapel,* 206 N.C. App. 123, 131 (2010). This is not and has never been the law.

E. Ultra Vires

Defendant argues that the STR Ordinance is within its authority because of its grant of power under the general zoning statutes to regulate the location and use of buildings, structures and land. Def. Br. 23. This argument has been repeatedly repudiated by North Carolina courts, including in cases in which Defendant was a party.

In the foundational case of *Graham Court Assoc. v. Town Council of the Town of Chapel Hill*, 281 S.E.2d 418 (1981), the NC Court of Appeals considered, as a matter of first impression, whether Defendant had the authority to require a property owner to obtain a special use permit in order to convert a multifamily residential structure from apartments to condominiums.

The court held, following the reasoning of many other states, that "zoning is the regulation by a municipality of the use of land within that municipality, and of the buildings and structures thereon not regulation of the ownership of the land or structures." *Id.* at 420. The *Graham* court also quoted with approval from a New Jersey case: "Defendants do not even suggest, nor do we believe they properly could, that owner-occupation of a dwelling is a different use of the property in a zoning sense from tenant-occupation, the actual occupancy of the residence in either case being by a single family". *Id.* at 421. It therefore held that the Town had no authority to require approval before the property owner could convert its property to owner-occupancy, so long as the residential use was unchanged: "If the town should prevail, the apartments would be relegated, now and for the future, to occupancy by tenants. The conversion which petitioner seeks would permit them to be owned by their occupants. There would be absolutely no change in the use of the land." *Id.* at 422.

Here, Defendant claims the opposite authority: to require Plaintiffs to obtain approval from the Town before converting their property from owner-occupation to tenant-occupation. Once again, if the town should prevail Plaintiff's house would be relegated, now and for the future, to owner occupancy. Given the clear statement of the North Carolina courts that this is not a change in use, the Town is equally without authority to dictate this decision.

Similarly in *City of Wilmington v. Hill*, 189 N.C. App. 173 (2008), the Court of Appeals considered an ordinance regulating garage apartments in residential districts. The City of Wilmington's ordinance allowed a property owner to construct a garage apartment in a residential zoning district, but only if the owner resided in either the main residence or the garage apartment. The Court of Appeals held that this ordinance was unconstitutional because the city could not require property to be owner-occupied as a precondition to certain uses. "[T]he owner occupancy requirement of [the ordinance] is at odds with our precedents, as it is "beyond the power of the municipality to regulate the manner of ownership of the legal estate."" *Id*. at 178 (quoting *Graham*).

The *Hill* court further held that an ordinance regulating occupancy of property exceeded the zoning authority granted in the North Carolina General Statutes, which only grant cities the power to "regulate and restrict the . . . use of buildings structures and land." The court held that there is no statutory authority for an ordinance that regulates the occupancy of property. *Id.*

Applying the logic of this line of cases, the Town can only regulate use of the property and not its type of ownership. Whether the owner lives in his single-family home and uses it as his primary residence or he leases it to other single-family tenants is only a difference in the type of ownership. It does not change the use of the property for single family residence. The Town has no powers to regulate <u>ownership</u> under the guise of regulating <u>use</u>.

The STR Ordinance requires the owner to live in his home for half the year for it to qualify as his primary residence. If he does not live in his home for at least half the year, the property does not qualify as a primary residence but is treated as a dedicated STR. This discrimination between homeowners depending on the duration of their stay is an attempt to regulate the type of ownership and not the use of the property. The ordinance is therefore *ultra vires* and is an overreach of delegated powers by the Town.

The recent decision by the North Carolina Court of Appeals in *Schroeder v. City of Wilmington* is not controlling as to this issue. The court agreed with the trial court's interpretation of N.C. Gen. Stat. § 160D-1207(c) as prohibiting local governments from requiring a short-term rental owner to obtain a permit to rent under Articles 11 or 12, a permission to rent under the same Articles, or to register the property as a rental with the government. *Schroeder v. City of Wilmington,* 2022-NCCOA-210 (2022). The provisions of Wilmington's ordinance requiring such a registration—as well as any provisions that are inseverable from that initial registration requirement—are preempted by Section 160D-1207(c) and its unambiguous predecessor Section 160A- 424(c). *Id.*

As discussed in Section H below, the *Schroeder* court considered the sole issue as to whether restrictions on short-term rentals were precluded by N.C. Gen. Stat. § 160D-1207, and it held that, absent a history of criminal activity at the property, cities are pre-empted by state law from requiring owners of rental property to either register or obtain permission from the city before renting and this holding clearly invalidates the Town's ordinance which requires such registration and permits. The *Schroeder* court did not consider, and therefore could not have decided, whether such restrictions are otherwise within municipal authority holding that their "decision renders moot Plaintiffs' constitutional challenges to the ordinance" due to which they did "not reach Plaintiffs'

cross-appeal". *See Schroeder* at *25: Relying only on the pre-emption aspect which was sufficient to allow the plaintiff's arguments in that case, in the interest of judicial economy, the court stated, "[w]e hold that the following provisions of the ordinance are not preempted by Section 160D-1207(c) and remain in effect: (1) the restriction of whole-house lodging to certain zoning districts…" Plaintiffs' argument as to this issue does not rely on Section 1207(c). That is a separate matter discussed in Section H below.

F.   Open Meetings

Defendant argues that this Court does not have jurisdiction to review Plaintiffs' claim under the North Carolina Open Meetings Law because: "Only the North Carolina Superior Courts have jurisdiction to enter injunctive relief or award remedies for violations of the Open Meetings Law." Def. Br. 26. Defendant's argument rests solely on the statutory language: "Any person may institute a suit in the superior court requesting the entry of a judgment declaring that any action of a public body was taken, considered, discussed, or deliberated in violation of this Article." N.C. Gen. Stat. § 143-318.16(a). No case has ever held that this language requires such a suit to be brought only in state, as opposed to federal, court.

Assuming, *arguendo*, that this is the intent of the statute, it is preempted by 28 U.S.C. 1332(a), which grants the federal district courts original jurisdiction in "all civil actions" between citizens of different states. "In all cases, where a general right is thus conferred, it can be enforced in any Federal court within the State having jurisdiction of the parties. It cannot be withdrawn from the cognizance of such Federal court by any provision of State legislation that it shall only be enforced in a State court." *Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270, 286 (1872). *See also Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir. 1961) ("The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state.

It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States.")

Defendant also argues that this claim is subject to the 45-day statute of limitations found in N.C. Gen. Stat. § 143-318.16A. However, Plaintiffs' claim is that the STR Ordinance is in excess of statutory authority under N.C. Gen. Stat. § 160D-1403.1(a)(2). Therefore, this claim in common with Plaintiffs' other claims is subject to the one-year statute of limitations found in N.C. Gen. Stat. § 160D-1403.1(c). Section 160D-1403.1 was first enacted in 2019 while Section 143-318.16A has existed since 1985. Where there is a conflict between the provisions of two statutes, "ordinarily the last in point of enactment will prevail as being the latest expression of the legislative intent." *Victory Cab Co. v. City of Charlotte*, 234 N.C. 572, 577 (1951).

G.  Dormant Commerce Clause

The Supreme Court has stated the test for violations of the Dormant Commerce Clause as follows: "when a state statute clearly discriminates against interstate commerce, it will be struck down ... unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992). Discrimination in this context is defined as "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). "If a law discriminates against interstate commerce, it is in big trouble because a discriminatory law is virtually per se invalid." *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 325 (2022).

Defendant argues that the STR Ordinance, which provides favorable treatment to property owners who rent their primary residence (i.e. those who live in the Town of Chapel Hill) is not discriminatory because "the alleged "burden" exists for anyone who wishes to operate a dedicated STR in a house that is not their primary residence, regardless of where they live." Def. Br. 27. Defendant also argues that the discrimination is alleviated because options remain for out-of-state owners: "Dedicated STRs are allowed in some districts and non-dedicated STRs are allowed in all residential districts, which leaves many options for out-of-state visitors." *Id*.

However, the test under the Dormant Commerce Clause is not whether it is still possible for out-of-state interests to operate. As the Fifth Circuit recently stated with regard to a similar ordinance in *Hignell-Stark* (*supra* at 327) "even if the residency requirement merely imposes a discriminatory burden on interstate commerce, it still qualifies as discriminatory." Further, with regard to the fact that the ordinance also discriminates against some intrastate owners, the *Hignell-Stark* court states: "But none of that matters. As the Supreme Court has repeatedly held, local ordinances that discriminate against interstate commerce are not valid simply because they also discriminate against intrastate commerce." *Id*.

Defendant further argues that the STR Ordinance burdens interstate commerce only indirectly and is not protectionist in intent. The ordinance itself indicates that at least one purpose of the ordinance is to protect local residents from outside forces. For instance, one of the enumerated goals of the ordinance is to "Foster success of local businesses." STR Ordinance p. 2. "But even if [the Town's] account is true, the dormant Commerce Clause prohibits more than laws with protectionist purposes. It also prohibits laws that discriminate against interstate commerce on their face." *Hignell-Stark, supra*.

In addition to providing local STR operators with an advantage over out-of-state STR operators, the STR Ordinance also advantages local consumers over out-of-state consumers of housing. "Our cases consistently have held that the Commerce Clause of the Constitution, Art. I, § 8, cl. 3, precludes a state from mandating that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders." *New England Power Co. v. New Hampshire*, 455 U.S. 331 (1982). Here, the natural resource is land, i.e. housing. The STR Ordinance is explicitly aimed at keeping short-term tenants out of existing residential neighborhoods. If a state cannot prevent the export of articles of trade in order to advantage in-state consumers, *see Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1 (1928), it equally cannot discourage out-of-state consumers from coming into the state to engage in commerce by renting housing.

H.  Freedom of Movement

Defendant argues that "The STR Ordinance in no plausible way violates Plaintiffs', or anyone else's, freedom of movement." Def. Br. 27. Much like the Dormant Commerce Clause, the Constitution's protection of the "right to travel" is intended to ensure that citizens of one state do not face impermissible burdens in entering another state: "by virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the Privileges and Immunities of Citizens in the several States that he visits." *Saenz v. Roe,* 526 U.S. 489, 501 (1999) (internal quotation marks omitted). The Privileges and Immunities Clause includes the right to travel to another state for the purpose of carrying on a trade or profession. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948).

The Supreme Court has identified "the mutually reinforcing relationship between the Privileges and Immunities Clause of Art. IV, § 2, and the Commerce Clause—a relationship that

stems from their common origin in the Fourth Article of the Articles of Confederation and their shared vision of federalism." *Hicklin v. Orbeck*, 437 U.S. 518, 531-532 (1978). Both provisions forbid government action that unreasonably creates burdens to trade and travel between states. As discussed in Section G above, the STR Ordinance has the effect of discriminating against out-of-state property owners. It similarly has the effect of limiting freedom of movement by creating new burdens to Chapel Hill property owners who choose to move out of the city, including to other states. By the same logic, therefore, the STR Ordinance is void as a violation of the right to travel.

Respectfully submitted, this is the 10th day of April, 2023.

BA FOLK, PLLC

/s/ Randy H. Herman
Randy H. Herman
N.C. Bar No. 46101
P.O. Box 90426
Raleigh, NC 27675
rherman@bafolk.com
(o) 919-825-1250
(f) 919.882.8297

<u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the word count limit set forth in Local Civil Rule 7.3(d)(1). The number of words in the body, headings, and footnotes of this Brief, exclusive of the caption, table of contents, signatures, and required certificates, does not exceed 6,250 words, according to the word count function of the software used to prepare this Brief.

<u>/s/ Randy H. Herman</u>