IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOE VALENTINE and IRENE           )
VALENTINE,                        )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )          1:22-cv-102
                                  )
TOWN OF CHAPEL HILL,              )
                                  )
          Defendant.              )

<u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

     Before this court is a Motion to Dismiss filed by Defendant
Town of Chapel Hill. (Doc. 27.) For the reasons stated herein,
Defendant's motion will be granted.

I.   <u>FACTUAL BACKGROUND</u>

     Plaintiffs Joe and Irene Valentine ("Plaintiffs") are a
married couple who own a single-family home ("the Subject
Property") in an area of the Town of Chapel Hill ("Defendant")
that is zoned Residential-2 ("R-2"). (Second Amended Complaint
("Compl.") (Doc. 26) ¶ 9.)[1] Plaintiffs purchased the Subject
Property in July 2004 and lived there, using it as "their

_____

     [1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

primary single family home," until August 2016. (Id. ¶ 10.)
Plaintiffs moved away from Chapel Hill in August 2016 but did
not sell the Subject Property, instead renting it "to earn
rental income to pay the mortgage and other expenses." (Id. ¶
11.) In so doing, Plaintiffs used "online short-term rental
('STR') platforms like AirBnB and VRBO." (Id. ¶ 12.)

"Prior to renting the Subject Property as an STR,
[Plaintiffs] investigated whether whole house dedicated rentals
for periods of fewer than 30 days were permitted by local law as
well as by the covenants, restrictions, and rules of their home
owners' association." (Id. ¶ 13.) During this investigation,
Plaintiffs "found no restrictions on such leasing either under
[Defendant's] then existing zoning regulations or their
homeowners association's covenants. They also found no
distinction between short- and long-term leases in the Town's
then-existing zoning regulations." (Id. ¶ 13.) "Accordingly,
having satisfied themselves that the Town's zoning regulations
as well as their HOA covenants did not bar homeowners from
leasing their property, in October 2016, [Plaintiffs] began
hosting short term vacation rentals at their home through two
short-term rental platforms." (Id. ¶ 15.)

From October 2016 to November 2021, Plaintiffs hosted 68
STR stays through AirBnB and 25 STR stays through VRBO at the

- 2 -

Subject Property. (Id. ¶¶ 15, 16.) "The entire Subject Property
was provided as a dedicated STR and almost all short term
tenants were single families[.]" (Id. ¶ 17.) The income derived
from these rentals "exceeds $75,000.00," and Plaintiffs
"continued to pay applicable property and other taxes" on the
Subject Property, including occupancy taxes "collected by the
property rental platforms AirBnB and VRBO and paid to
[Defendant] on behalf of [Plaintiffs]." (Id. ¶¶ 21, 22.)
Plaintiffs allege that Defendant "had both actual and
constructive notice of the leasing of the Subject Property as a
dedicated STR since October 2016" because "[n]o objection was
ever received" from Defendant, while Defendant "continued to
receive occupancy and other taxes for over five years." (Id. ¶
23.)

      "On or around May 2021," Plaintiffs learned that Defendant
"was considering enacting an ordinance to ban investors from
owning and operating STRs in residential zones in Chapel Hill
(the 'STR Ordinance')." (Id. ¶ 26.) Plaintiffs sent a letter to
Defendant explaining, inter alia, that "local governments have
delegated powers to regulate land use through zoning but it is
impermissible for [Defendant] to use zoning regulations to
regulate the type of ownership," and that "the proposed
ordinance would unjustifiably restrict [Plaintiffs] from

- 3 -

exercising their property rights to earn rental income which
would cause them economic damage." (Id.) Plaintiffs also
emphasized in this letter that "there were no problems on
account of STRs in Chapel Hill that warranted banning them," and
"banning STRs would be an ultra vires act." (Id. ¶ 27.)
Plaintiffs reiterated their opposition to the proposed STR
Ordinance at two public meetings held by Defendant. (Id. ¶ 28.)

Defendant held "public hearings to consider an amendment to
the [Land Use Management Ordinance ("LUMO")] to, among other
things, prohibit dedicated short-term rentals in certain zoning
districts." (Id. ¶ 36.) In this context, the word "dedicated"
refers to "a short-term rental unit whose Owner does not live on
the property." (Id. ¶ 35.) On May 4, 2021, Defendant's Planning
Commission "voted to recommend that the proposed Land Use
Management Ordinance Text Amendment, regarding Short Term
Rentals, was inconsistent with the Town's Comprehensive Plan."
(Id. ¶ 41.) On May 18, 2021, a subcommittee of Defendant's
Planning Commission Advisory Board opposed the proposed
ordinance for several reasons. (Id. ¶ 37.)

Despite these recommendations and "opposition from numerous
STR owners expressed at its virtual public meetings,"
Defendant's Town Council "unanimously voted at its June 23, 2021
meeting to enact the STR Ordinance." (Id. ¶ 44.) The STR

- 4 -

Ordinance "banned the operation of dedicated STRs in residential zones including R-2 zone where [Plaintiffs'] Subject Property was located." (Id.) The new ordinance went into effect immediately, but "provided a grace period of 18 months during which time dedicated STR operators had to come into compliance with the ordinance." (Id. ¶¶ 45, 44.) The practical effect of the STR Ordinance is that it prohibits rental of "residential dwelling unit(s) located on a property not used as a primary residence in which the dwelling unit is rented in whole or in part for fewer than thirty (30) consecutive days for a fee[.]" (Id. ¶ 49.) A "primary residence" is one "in which the host resides a majority of the year (183 days per year or 50 percent or more of the time)." (Id. ¶ 48.) The STR Ordinance does not include a "grandfather clause." (See id. ¶ 42.) In effect, the STR Ordinance prohibits STRs on properties which are not the STR host's primary residence. (See id. ¶¶ 47–49.)

Plaintiffs "are currently residents of Florida where they maintain their primary residence," and the Subject Property "is currently their second home where they do not reside for a majority of the year and it would therefore not meet the definition of a primary residence under the ordinance." (Id. ¶ 51.) As a result, the STR Ordinance prohibits Plaintiffs from renting out the Subject Property as a STR. (See id. ¶ 53 ("the

- 5 -

use of a non-primary residence to operate a dedicated STR is prohibited in R-2 zone," and the Subject Property "is a non-primary residence located in R-2 zone").)

On September 1, 2021, Defendant informed Plaintiffs that "the use of the [Subject Property] as dedicated STRs is not a legal nonconforming use as the short-term rental use was not expressly listed in the LUMO and was thus prohibited by the LUMO prior to the short-term rental ordinance of June 23, 2021." (Br. in Opp. to Def.'s Mot. to Dismiss ("Pls.' Resp.") (Doc. 30) at 2.) "This decision is the subject of a separate appeal in Orange County Superior Court case number 21 CVS 1341" brought pursuant to N.C. Gen. Stat. § 160D-405(a). (Id.; see also Ex. C ("Pls.' Pet. for Writ of Cert.") (Doc. 28-3).)[2]

Plaintiffs raise numerous claims for relief from the STR Ordinance. Plaintiffs ask this court to declare that:

1. The STR Ordinance is arbitrary and capricious in violation of 42 U.S.C. § 1983;

---

[2] The court may consider "documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting Defendant's motion to dismiss to one for summary judgment. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014) (internal citations and quotation marks omitted).

- 6 -

2. Plaintiffs were denied due process in violation of Article I, Section 19, of the North Carolina Constitution and N.C. Gen. Stat. § 160D-1403.1;

3. Plaintiffs were denied equal protection of law in violation of Article I, Section 19, of the North Carolina Constitution and N.C. Gen. Stat. § 160D-1403.1;

4. Plaintiffs were denied equal protection of law in violation of 42 U.S.C. § 1983;

5. Plaintiffs were denied vested rights in violation of Article I, Section 19, of the North Carolina Constitution and N.C. Gen. Stat. § 160D-1403.1;

6. Defendant acted *ultra vires* in violation of Article I, Section 19, of the North Carolina Constitution and N.C. Gen. Stat. § 160D-1403.1;

7. Defendant violated North Carolina's Open Meetings Law (N.C. Gen. Stat. § 143-318.16A(a));

8. The STR Ordinance violates the Dormant Commerce Clause of Article I, Section 8, of the United States Constitution; and

9. Plaintiffs were denied freedom of movement in violation of 42 U.S.C. § 1983.

(*See* Compl. (Doc. 26) ¶¶ 58–164.)

## II. <u>PROCEDURAL HISTORY</u>

Plaintiffs filed this action on February 4, 2022. (Verified Compl. (Doc. 1).) Plaintiffs moved for preliminary injunction on December 23, 2022, (Mot. for Prelim. Inj. (Doc. 20)), which this court denied on February 24, 2023, (Order (Doc. 25)). Plaintiffs filed their Second Amended Complaint on March 7, 2023, (Compl. (Doc. 26)), and Defendant moved to dismiss for lack of subject matter jurisdiction and failure to state a claim, (Def.'s Mot. to Dismiss ("Def.'s Mot.") (Doc. 27)), filing a memorandum in support, (Br. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") (Doc. 28)). Plaintiffs responded, (Resp. in Opp'n to Def.'s Mot. to Dismiss (Doc. 29); Pls.' Resp. (Doc. 30)), and Defendant replied, (Reply Br. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Reply") (Doc. 31)). On February 6, 2024, this court asked the parties for supplemental briefing on the issue of <u>Burford</u> abstention, and the parties filed responsive briefs. (Def. Town of Chapel Hill's Suppl. Br. ("Def.'s Suppl. Br.") (Doc. 35); Pls.' Suppl. Br. ("Pls.' Suppl. Br.") (Doc. 40).) Defendant's motion is now ripe for review.

## III. <u>STANDARD OF REVIEW</u>

Courts "should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can

- 8 -

be based or if the jurisdictional allegations in the complaint are not true." McLaughlin v. Safeway Servs., LLC, 429 F. App'x 347, 348 (4th Cir. 2011) (citation omitted); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (outlining two ways lack of subject matter jurisdiction arises: (1) failure "to allege facts upon which subject matter jurisdiction can be based" and (2) "the jurisdictional allegations of the complaint [are] not true"). A challenged petitioner "bears the burden of persuasion" in defending subject matter jurisdiction. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id.

IV. **ANALYSIS**

   A. **Prior Pending Action Doctrine**

Defendants argue that this court lacks subject matter
jurisdiction under the prior pending action doctrine because
"Plaintiffs previously filed an action concerning the same
claims in North Carolina state court, which is pending." (Def.'s
Br. (Doc. 28) at 8.) In response, Plaintiffs contend that their
"pending certiorari matter focuses solely on the question that
was reviewed and decided by the Board of Adjustment: are
Plaintiffs entitled to continue their rental of their property
for short-term tenants as a non-conforming (i.e. grandfathered)
use?" (Pls.' Resp. (Doc. 30) at 5.) Plaintiffs further assert
that "[t]he constitutionality of an ordinance provision
generally cannot be challenged in a certiorari review of a board
of adjustment decision. . . . The underlying validity of the
ordinance provision is also not at issue in a certiorari
petition." (Id. at 5–6.)

Under North Carolina law, "where a prior action is pending
between the same parties for the same subject matter in a court
within the state having like jurisdiction, the prior action
serves to abate the subsequent action." Eways v. Governor's
Island, 326 N.C. 552, 558, 391 S.E.2d 182, 185 (1990).
"Moreover, where the prior action has been adjudicated by the

- 10 -

trial court but is pending appeal it will continue to abate a
subsequent action between the parties on substantially identical
subject matter and issues." Id. This doctrine, "which implicates
'essentially the same questions as the outmoded plea of
abatement,' Nationwide Mut. Ins. Co. v. Douglas, 148 N.C. App.
195, 197, 557 S.E.2d 592, 593 (2001), is rooted in the principle
of judicial economy and the basic rationale that when a 'court
can dispose of the entire controversy in the prior action[,] . .
. the subsequent action is wholly unnecessary.' Clark v. Craven
Reg'l Med. Auth., 326 N.C. 15, 20, 387 S.E.2d 168, 171 (1990)."
Khashman v. Khashman, 248 N.C. App. 836, 791 S.E.2d 283, 2016 WL
4086759, at *4 (Aug. 2, 2016) (unpublished table decision).

    "The ordinary test for determining whether or not the
parties and causes are the same for the purpose of abatement by
reason of the pendency of the prior action is this: Do the two
actions present a substantial identity as to parties, subject
matter, issues involved, and relief demanded?" Shoaf v. Shoaf,
219 N.C. App. 471, 475-76, 727 S.E.2d 301, 305 (2012) (quoting
Jessee v. Jessee, 212 N.C. App. 426, 438, 713 S.E.2d 28, 37
(2011)). The two actions need not be wholly identical, but must
be "substantially similar" such that "[t]he legal issues or
claims that would be addressed in the present action would be
the same as those raised in the companion case." Skeen v.

- 11 -

McIntyre, 189 N.C. App. 210, 657 S.E.2d 446, 2008 WL 565359, at *3-4 (Mar. 4, 2008) (unpublished table decision).

In the action before this court, Plaintiffs seek a declaratory judgment that the STR Ordinance violates the federal Constitution because it was arbitrarily and capriciously enacted, violates the Equal Protection Clause of the Fourteenth Amendment, violates the Dormant Commerce Clause, and infringes on Plaintiffs' freedom of movement. (Compl. (Doc. 26) ¶¶ 75, 110, 139, 164.) Plaintiffs also challenge the STR Ordinance's validity under the North Carolina Constitution, (id. ¶¶ 77, 99, 115, 128), and N.C. Gen. Stat. § 143-318.16A(a), (id. ¶ 131). In the prior action pending in the Orange County Superior Court, Plaintiffs seek appellate review of the Board of Adjustment ("BOA") of the Town of Chapel Hill's determination that Plaintiffs' use of the Subject Property as a STR is not a legal nonconforming use pursuant to N.C. Gen. Stat. §§ 160D-705 and 160D-1402. (See Pls.' Pet. for Writ of Cert. (Doc. 28-3) at 1.)

Under N.C. Gen. Stat. § 160D-1402(j)(1)(a), when an individual seeks appeal of a local zoning board's decision,

> the trial judge has jurisdiction to determine whether the hearing officers' decisions are "[i]n violation of constitutional provisions, including those protecting procedural due process rights." N.C. Gen. Stat. § 160D-1402(j)(1)(a). The superior court decides constitutional questions de novo and, if necessary, has the authority to "allow the record to be supplemented with affidavits, testimony of

- 12 -

> witnesses, or documentary or other evidence[.]"
> Id. § 160D-1402(j)(1), (i).

Fearrington v. City of Greenville, 282 N.C. App. 218, 233, 871 S.E.2d 366, 378 (2022) (emphasis added). Further, when reviewing a decision under the provisions of N.C. Gen. Stat. § 160D-1402, the superior court is charged with ensuring "that the rights of petitioners have not been prejudiced because the decision-making body's findings, inferences, conclusions, or decisions" were, inter alia, "[i]n violation of constitutional provisions, including those protecting procedural due process rights," "[i]n excess of the statutory authority" conferred upon the decision-making board or the local government, "[i]nconsistent with applicable procedures specified by statute or ordinance," or "[a]rbitrary or capricious." N.C. Gen. Stat. § 160D-1402(j)(1) (emphasis added).

Importantly, though N.C. Gen. Stat. § 160D-1402 permits Plaintiffs to appeal the BOA's decision to the Orange County Superior Court, the Superior Court in that circumstance can review only the board's decisions, not evaluate the constitutionality of the STR Ordinance itself. See N.C. Gen. Stat. § 160D-1402(j)(1). Though Defendant is correct that Plaintiffs' pending action in the North Carolina state court was filed prior to the action before this court, the prior pending action's scope is limited only to appellate review of the BOA's

- 13 -

determination that Plaintiffs' use of the Subject Property as a
STR is not a legal nonconforming use, not evaluating the
validity of the STR Ordinance itself. (See Pls.' Pet. for Writ
of Cert. (Doc. 28-3) at 1.) Therefore, there is not a
substantial identity of subject matter, issues involved, or
relief demanded in the prior pending state action and this
federal action, so Plaintiffs' claims will not be dismissed
under the prior pending action doctrine.

### B.    **Burford Abstention**

Though the prior pending action doctrine does not bar
Plaintiffs' claims, this court finds that abstention under
Burford is appropriate here.

> [U]nder the Burford abstention doctrine,
> although a federal district court sitting in equity
> possesses subject matter jurisdiction over a civil
> action, it may, in its sound discretion, refuse to
> exercise such jurisdiction in certain circumstances
> if abstention is necessary to show "proper regard for
> the rightful independence of state governments in
> carrying out their domestic policy."

Henry v. Jefferson Cnty. Planning Com'n, 215 F.3d 1318, 2000 WL
742188, at *4 (4th Cir. June 9, 2000) (unpublished table
decision) (quoting Burford v. Sun Oil Co., 319 U.S. 315, 317-18
(1943)). Accordingly,

- 14 -

> [w]here timely and adequate state-court review is
> available, a federal court sitting in equity[3] must
> decline to interfere with the proceedings or orders
> of state administrative agencies: (1) when there are
> "difficult questions of state law bearing on policy
> problems of substantial public import whose
> importance transcends the result in the case then at
> bar"; or (2) where the "exercise of federal review of
> the question in a case and in similar cases would be
> disruptive of state efforts to establish a coherent
> policy with respect to a matter of substantial public
> concern."

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans

(NOPSI), 491 U.S. 350, 361 (1989) (quoting Colo. River Water

Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)).

---

[3] "Though we have thus located the power to abstain in the historic discretion exercised by federal courts 'sitting in equity,' we have not treated abstention as a 'technical rule of equity procedure.' Thibodaux, at 28, 79 S.Ct., at 1072. Rather, we have recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. See NOPSI, supra, at 359, 109 S.Ct., at 2513 (mandate of federal jurisdiction 'does not eliminate . . . the federal courts' discretion in determining whether to grant certain types of relief'). Accordingly, we have not limited the application of the abstention doctrines to suits for injunctive relief, but have also required federal courts to decline to exercise jurisdiction over certain classes of declaratory judgments, see, e.g., Huffman, 319 U.S., at 297, 63 S.Ct., at 1072 (federal court must abstain from hearing declaratory judgment action challenging constitutionality of a state tax)[,] . . . the granting of which is generally committed to the courts' discretion, see Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995) (federal courts have 'discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites')." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 718–19 (1996).

The Fourth Circuit has "repeatedly indicated [that] 'cases involving questions of state and local land use and zoning law are a classic example of situations' where Burford should apply, and that 'federal courts should not leave their indelible print on local and state land use and zoning law by entertaining these cases[.]'" MLC Auto., LLC v. Town of S. Pines, 532 F.3d 269, 282 (4th Cir. 2008) (quoting Pomponio v. Fauquier Cnty. Bd. of Sup'rs, 21 F.3d 1319, 1327 (4th Cir. 1994) (en banc), overruled in part on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728-31 (1996)). "Virtually all" federal claims that involve state or local zoning laws, "when stripped of the cloak of their federal constitutional claims, are state law cases" because "it is either the zoning or land use decisions, decisional processes, or laws that are the bases for the plaintiffs' federal claims." Pomponio, 21 F.3d at 1326 (collecting cases).

Even when plaintiffs, as here, have argued that a local zoning law is unconstitutionally vague, arbitrary, or discriminatory, federal courts in this Circuit have abstained under Burford to "avoid the necessity of a decision on the federal constitutional question presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs." Fralin & Waldron, Inc.

v. City of Martinsville, 493 F.2d 481, 483 (4th Cir. 1974). See
also Caleb Stowe Assocs. v. Cnty. of Albemarle, 724 F.2d 1079,
1080 (4th Cir. 1984) (abstaining despite plaintiffs alleging
violations of the Fifth and Fourteenth Amendments to the United
States Constitution under 42 U.S.C. § 1983); Kotmair v. Cnty.
Com'rs of Carroll Cnty., 914 F.2d 1491, 1990 WL 141490, at *1-2
(4th Cir. Oct. 2, 1990) (unpublished table decision) (affirming
district court's abstention from considering plaintiff's Fifth
and Fourteenth Amendment claims when "administrative
determinations by the zoning commission are subject to
expeditious and adequate judicial review," even though reviewing
state court "did not indicate whether it had considered
[plaintiff's] constitutional arguments in reaching its
determination"); Reynolds v. City of Roanoke, No. 7:10-cv-00260,
2011 WL 2787269, at *3 (W.D. Va. July 13, 2011), aff'd, 459 F.
App'x 287 (4th Cir. 2011) (abstention appropriate because
plaintiff "is claiming that Roanoke City committed
constitutional, state, and statutory violations. Each claim
derives from whether [plaintiff's] use of his property violates
Roanoke City zoning ordinances, and whether those zoning
ordinances violate federal or state law"); I-77 Props., LLC v.
Fairfield Cnty., No. 3:07-1524, 2007 WL 9753900, at *1, *3
(D.S.C. Aug. 6, 2007), aff'd, 288 F. App'x 108 (4th Cir. 2008)

- 17 -

(abstention appropriate though plaintiff brought claims "under 42 U.S.C. § 1983 against defendant for violating both its due process and equal protection rights under the Fourteenth Amendment").

Here, "exercise of federal review . . . would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." NOPSI, 491 U.S. at 361. The State of North Carolina has clearly demonstrated a desire to cohesively and independently grapple with matters concerning local zoning law, including Constitutional challenges to local ordinances. N.C. Gen. Stat. § 160D-1403.1(a) provides that, "in lieu of any remedies available under G.S. 160D-405," the statutory provision that permits appeals of zoning decisions, a plaintiff "may bring an original civil action seeking declaratory relief, injunctive relief, damages, or any other remedies provided by law or equity, in superior court or federal court" for a variety of enumerated claims, including claims that an ordinance, either on its face or as applied, is unconstitutional or "is ultra vires, preempted, or otherwise in excess of statutory authority."

Though Section 160D-1403.1(a) permits a civil action to be filed in federal court, this court finds that it would cause "needless friction in federal-state relations" if it were to

- 18 -

consider the merits of Plaintiffs' claims here while Plaintiffs'
appeal of the BOA's decision is pending before the Orange County
Superior Court. Joinder of Plaintiffs' civil action challenging
the ordinance itself to Plaintiffs' petition for certiorari is
expressly permitted, and the statutory framework demonstrates a
preference for joinder of petitions for certiorari and civil
actions in the state court if the plaintiff has a certiorari
petition pending. Section 160D-1403.1(a) states

> [i]f the decision being challenged is from an
> administrative official charged with enforcement of
> a local land development regulation, the party with
> standing must first bring any claim that the
> ordinance was erroneously interpreted to the
> applicable board of adjustment pursuant to G.S. 160D-
> 405. An adverse ruling from the board of adjustment
> may then be challenged in an action brought pursuant
> to this subsection with the court hearing the matter
> de novo together with any of the claims listed in
> this subsection.

Section 160D-1403.1(d) then permits joinder of a civil action to
a petition for writ of certiorari: "An original civil action
authorized by this section may, for convenience and economy, be
joined with a petition for writ of certiorari and decided in the
same proceedings."

This statutory scheme permitting joinder of civil actions,
which can be filed in state or federal court, to petitions for
writ of certiorari, which can be filed only in state court,
indicates the State of North Carolina's interest in uniformly

- 19 -

carrying out its domestic policy independent of piecemeal interference by federal courts. See Cnty. of Charleston v. Finish Line Found. II Inc., No. 2:17-cv-03496, 2018 WL 2002070, at *3 (D.S.C. Apr. 30, 2018) ("South Carolina courts have a greater interest in resolving this dispute over the interpretation and application of the county's zoning regulations than does a federal court."); see also MacDonald v. Vill. of Northport, 164 F.3d 964, 968-69 (6th Cir. 1999) ("By providing the procedure by which the MacDonalds may challenge the validity of the 7th Street right-of-way, Michigan has established a policy and has consolidated judicial review of these cases in the local forums best suited to adjudicate the local issues and facts raised in such cases. Thus, federal review of the question in this case would have disrupted 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'").

Accordingly, it is appropriate for this court to abstain from considering Plaintiffs' many challenges to the STR Ordinance, especially as Plaintiffs have already brought a petition for writ of certiorari in the Orange County Superior Court. North Carolina courts "have extensive familiarity and experience" with matters like the STR Ordinance and its

constitutionality,[4] and "they should have the initial opportunity
to pass upon them." Fralin & Waldron, Inc., 493 F.2d at 482.
Additionally, "[a] state adjudication may well avoid the
necessity of a decision on the federal constitutional
question[s] presented as well as avoid needless friction in
federal-state relations."[5] Id. at 482-83. "An unseemly conflict
between two sovereignties would result, including the
unnecessary impairment of state functions, if this federal court
were to exercise its jurisdiction in an area of important state
domestic policy like that involved here." McFadden v. City of
Baltimore, No. Civ. H-00-3037, 2001 WL 83277, at *4 (D. Md. Jan.
30, 2001). As a result, this court will abstain from considering
Plaintiffs' claims, which may be brought in an original civil
action before the same court considering the petition for writ
of certiorari pursuant to N.C. Gen. Stat. §§ 160D-1403-1(a) and
(d).

---

[4] (See, e.g., Doc. 18-1 at 1); Eric P. Plow v. Town of
Chapel Hill, N.C., 21-cvs-988 (N.C. Super. Ct. July 1, 2022).
    [5] Of additional consideration, a decision on the merits by
this court might enjoin the Orange County Superior Court's
appellate review of the BOA's decision, which by "binding it
under principles of collateral estoppel, and . . . creat[ing]
the impropriety of a race to a decision between the courts." See
Accent Fuels, Inc. v. Trimarchi, No. 2:20-CV-00281, 2021 WL
461882, at *4 (W.D. Pa. 2021). Presumably, this is one of many
reasons the North Carolina General Assembly expressly permits
civil actions pursuant to Section 160D-1403.1 to be brought in
conjunction with petitions for writ of certiorari.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS THEREFORE ORDERED** that
Defendant Town of Chapel Hill's Motion to Dismiss, (Doc. 27), is
**GRANTED** and this action is **DISMISSED**. Because the facts and
circumstances described herein could change, the dismissal is
without prejudice.

A Judgment dismissing this action will be filed
contemporaneously herewith.

This the 29th day of March, 2024.


_____
United States District Judge

- 22 -